611 F.2d 738
 CHURCH OF SCIENTOLOGY OF CALIFORNIA, a nonprofit
corporation, Plaintiff- Appellant,
v.
UNITED STATES DEPARTMENT OF the ARMY: Howard H. Callaway,
Secretary of the Army; U. S. Intelligence Agency;
Major Aaron, Assistant Chief of Staff
for Army Intelligence,
Defendants-Appellees.
CHURCH OF SCIENTOLOGY OF CALIFORNIA, a nonprofit
corporation, Plaintiff- Appellant,
v.
UNITED STATES DEPARTMENT OF DEFENSE; Office of the Secretary
of Defense; James R. Schlesinger, Secretary of the
Department of Defense; United States Department of the Navy;
J. Wm. Middendorf II, Secretary of the Navy; Naval
Intelligence Command: Rear Admiral E. F. Rectanus, Director
of Naval Intelligence, Defendants- Appellees.
 Nos. 78-1168, 78-1169.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 7, 1979.
As Amended on Denial of Rehearing April 7, 1980.
As Modified.
Suggestion for Rehearing En Banc in No. 78-1169 Rejected
April 7, 1980.
 
 Barry Leigh Weissman, Beverly Hills, Cal., for plaintiff-appellant.
 Barbara L. Herwig, Dept. of Justice, Washington, D. C., for defendants-appellees.
 On Appeal from the United States District Court for the Central District of California.
 Before TUTTLE,* TRASK, and ANDERSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Plaintiff Church of Scientology of California ("the Church") appeals in these cases, consolidated on appeal for oral argument and disposition, from judgments of the district court pertaining to certain documents requested of the defendants under the Freedom of Information Act, 5 U.S.C. § 552. The judgments upheld the actions of the defendants in releasing certain documents with details excised, and their refusal to release three documents in any form. We affirm in part and reverse in part.
 
 I. JURISDICTION
 
 2
 The district court took jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B). Our jurisdiction on appeal is based upon our authority to review the final order of a district court, 28 U.S.C. § 1291.
 
 II. THE PROCEEDINGS BELOW
 
 3
 The Church filed requests pursuant to the Freedom of Information Act, 5 U.S.C. § 552, for any documents pertaining to the Church or its founder, L. Ron Hubbard, which were in the possession of defendant Department of Defense ("Defense"), and defendant Department of the Army ("Army"). Both defendants complied with the requests, releasing a number of documents in their entirety, releasing only edited versions of others, and refusing to release any portion of certain documents.
 
 
 4
 Dissatisfied from some of the defendants' responses, the Church resorted to legal action to compel disclosure. On September 9, 1975, the Church filed a complaint seeking an injunction against withholding of records in Church of Scientology v. United States Department of the Army, No. CV-75-3056-F. On December 4, 1975, the Church filed a similar complaint in Church of Scientology v. United States Department of Defense, No. CV-75-4072-F. On June 2, 1977, the court below granted summary judgment for the defendants in each case.
 
 
 5
 Numerous documents were involved. The Church appeals in each case the court's rulings on specific documents. In Department of Defense, the Church's appeal involves three documents, two of which were released with portions excised, and the other withheld entirely. In Department of the Army, the Church appeals on six documents, four of which were released with portions excised, and the other two withheld entirely. For all but two of the documents, the court below found that release of the excised information was protected by one of several specific exemptions to disclosure under the Freedom of Information Act. The court withheld two documents in Department of the Army because each was the subject of pending litigation in another federal district. Details on specific documents will be developed in the course of this opinion.
 
 III. THE FREEDOM OF INFORMATION ACT
 
 6
 The Freedom of Information Act, 5 U.S.C. § 552, mandates a policy of broad disclosure of government documents when production is properly requested. 552(a)(3) reads:
 
 
 7
 ". . . each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."
 
 
 8
 When a request is made, an agency may withhold a document, or portions thereof, only if the information contained in the document falls within one of nine statutory exemptions to the disclosure requirement contained in § 552(b). Three of the nine section (b) exemptions are relevant to this appeal. (b)(1) exempts from disclosure information specifically authorized by an Executive order to be kept secret "in the interest of national defense or foreign policy" and which is properly classified pursuant to such an order. (b)(6) authorizes the withholding of information which would constitute a "clearly unwarranted invasion of personal privacy" if found in "personnel and medical files and similar files." (b)(7) exempts from disclosure "investigatory records compiled for law enforcement purposes" if disclosure would have one of several specified adverse effects.
 
 
 9
 The nine exemptions to the Act are to be narrowly construed. See, e. g., Bristol-Meyers Company v. F. T. C., 138 U.S.App.D.C. 22, 424 F.2d 935 (D.C.Cir. 1970), Cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970).
 
 IV. THE STANDARD OF REVIEW
 
 10
 An appellate court has essentially two tasks in reviewing judgments on Freedom of Information Act issues: (1) the court must determine whether the district judge had an adequate factual basis for his or her decision, and (2) if an adequate factual basis was established, the court must determine whether the decision below was clearly erroneous.
 
 
 11
 A. Factual Basis: Significance of the In Camera Inspection
 
 
 12
 The burden is placed upon the government agency to establish that a given document is exempt from disclosure. See, e. g., Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Harvey's Wagon Wheel, Inc. v. N. L. R. B., 550 F.2d 1139, 1141, 1142 (9th Cir. 1976). In meeting its burden of proof, the government may not rely upon "conclusory and generalized allegations of exemptions . . . ." Vaughn v. Rosen, 157 U.S.App.D.C. 340, 346, 484 F.2d 820, 826 (D.C.Cir. 1973). On the other hand, the government need not specify its objections in such detail as to compromise the secrecy of the information. Id.
 
 
 13
 The government may rely upon detailed affidavits or oral testimony so long as the evidence offered enables the court to make an independent assessment of the government's claim of exemption. Harvey's Wagon Wheel, Inc. v. N. L. R. B., 550 F.2d 1139, 1141 (9th Cir. 1976); See also Environmental Protection Agency v. Mink, 410 U.S. 73, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). If the agency supplies a reasonably detailed affidavit describing the document and facts sufficient to establish an exemption, then the district court need look no further in determining whether an exemption applies.
 
 
 14
 If, however, the court finds the affidavits or testimony submitted too generalized to establish eligibility for an exemption, it may, in its discretion, proceed to examine the disputed documents In camera for a first-hand determination of their exempt status. 5 U.S.C. § 552(a)(4)(B). One of the major purposes of the 1974 amendments to the Freedom of Information Act, P.L. 93-502, 88 Stat. 1561 (1974), was to clarify the discretion of the trial court to conduct an In camera inspection of classified government documents.[1] Though the burden remains at all times on the government to establish exempt status, In camera inspection may supplement an otherwise sketchy set of affidavits. By first-hand inspection, the court may determine whether the weakness of the affidavits is a result of poor draftsmanship or a flimsy exemption claim. Irons v. Bell, 596 F.2d 468, 471, n.6 (1st Cir. 1979). Cf. Mead Data Central, Inc. v. United States Department of the Air Force, 184 U.S.App.D.C. 350, 359, 566 F.2d 242, 251 (D.C.Cir. 1977).
 
 
 15
 We cannot stress strongly enough, however, that the district court's inspection prerogative is not a substitute for the government's burden of proof, and should not be resorted to lightly. In cases involving requests for hundreds of documents, no trial court can reasonably be expected to wade through a mass of exhibits In camera. We also underscore similar limitations upon In camera inspection at the appellate level.
 
 
 16
 The Church here has argued that the government failed in either case to present sufficiently detailed affidavits or depositions, and thereby failed to meet its burden of proof. While we agree that some of the affidavits presented were drafted in a somewhat conclusory fashion, we find that the trial court properly undertook an In camera inspection of the disputed documents, and therefore had an adequate factual basis for its decision. The small number of documents requested, and their relative brevity, made these cases appropriate instances for exercise of the district court's inspection prerogative. In viewing both the edited and unedited versions of the documents, the trial court had the opportunity to inspect specific portions which the government claimed to be exempt from disclosure. We stress again, however, that the burden of proof in FOIA cases remains squarely on the government, and that In camera inspection is a procedure which the trial court need invoke only where it finds inspection appropriate, in its discretion.
 
 B. The "Clearly Erroneous" Standard
 
 17
 Once we are satisfied that the trial court had an adequate basis to decide, we are guided by the "clearly erroneous" standard in evaluating the substance of that decision. See Mead Data Central, Inc. v. United States Department of the Air Force, 184 U.S.App.D.C. 350, 359, 566 F.2d 242, 251, n. 13 (D.C.Cir. 1977).
 
 V. THE ISSUE OF SEGREGABILITY
 
 18
 Document No. 5 in Department of Defense was withheld in its entirety, and the district court approved the Department's action here on the basis of exemptions (b)(1) and (b)(7)(D).
 
 
 19
 5 U.S.C. § 552(b) provides, in part, that:
 
 
 20
 "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."
 
 
 21
 Courts are, therefore, required to segregate exempt portions of documents from those portions which are not exempt.
 
 
 22
 The court below entered no findings on whether any specific portions of the document might be released without endangering national security.[2] We find it necessary to remand to the district court for specific findings on the issue of segregability. There is no longer any question that the doctrine of segregability applies to the national security exemption as well as to the exemptions under the Freedom of Information Act. See Founding Church of Scientology of Washington, D. C., Inc. v. Bell, 195 U.S.App.D.C. 363, 603 F.2d 945 (D.C.Cir. 1979). Accordingly, it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof.
 
 
 23
 We remand to the district court for findings on the segregability of any portion of Document No. 5 consistent with the exemptions to the Freedom of Information Act. On remand, the district court should consider again all affidavits and depositions, and perhaps call for additional testimony dealing with any portions of the document which might be revealed without damaging either national security or a criminal investigation. It may well be the case that no portion of Document No. 5 may be revealed without damaging national security. However, we cannot discern from the record whether the court actually considered that issue.[3]
 
 VI. UNWARRANTED INVASION OF PERSONAL PRIVACY
 
 24
 For each of the remaining documents in both cases, the court below found the exemption for material, the disclosure of which would constitute a "clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6) applicable. Each document had been released with portions excised, and the Church essentially challenged the propriety of the excisions. We affirm the court's ruling on the (b)(6) exemption for each document. For the sake of convenience, we adopt the lower court's numbering scheme for each document.
 
 A. The Documents
 1.) Department of Defense
 
 25
 Document No. 3 in Department of Defense is a background investigation of a particular individual. Among the information contained in this somewhat lengthy document is the name of the individual under investigation, and various pieces of information which would tend to identify the individual if revealed to the Church. The unexpurgated document reveals details such as employment background, a number of religious affiliations, and other information relating to this individual's personal life. For certain of the excisions, the defendant has claimed exemption (7)(D) only, and these will be considered later in this opinion.
 
 
 26
 Other excisions in Document No. 3 do not deal directly with the individual under investigation, but do reveal affiliations of various other individuals.
 
 
 27
 Document No. 4 was released with eleven deletions. The document consists of a single-page memorandum regarding an individual who was interviewed by the Naval Investigative Service. The excised portions are either references to the individual's name or to details which would tend to identify the individual if revealed. The unexpurgated document reveals details of the individual's employment history, group affiliations, and personal life.
 
 2.) Department of the Army
 
 28
 Document Nos. 3, 4, 5, and 6 in Department of the Army appear to be related documents involving a security investigation of a particular individual. The (b)(6) exemption claim for each document largely involves material which would tend to identify this individual.
 
 
 29
 Document No. 3 is a single-page memorandum dealing mainly with an investigation of the Church of Scientology and potential prosecutions of the Church and its leadership. The only information deleted consists of the names of the individuals under investigation, an interviewee, and minor details tending to identify each of them.
 
 
 30
 Document No. 4 appears to be a general background memorandum dealing with the doctrine of Scientology. The only deletions are references to names of two individuals who were reportedly associated with the Church, and some details tending to identify each of them. As a whole, the unexpurgated document tends to reveal details of those individuals' affiliations, both religious and political, and of their employment background.
 
 
 31
 Document No. 5 is a report of an interview with the subject of the investigation, consisting of two pages. Large chunks of this document have been deleted, all of it information tending to identify the individual. The information reveals details such as educational background, religious affiliations, employment history, and some allusions to emotional make-up.
 
 
 32
 Document No. 6 is the full text of the interview referred to in Document No. 5. It largely elaborates on details contained in Document No. 5, and refers to a wide range of information dealing with the subject individual's private life. The bulk of the interview was excised.
 
 B. The Privacy Exemption
 
 33
 The legislative history of 5 U.S.C. § 552(b)(6) is sparse, but instructive. The exemption for "personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" has remained virtually unchanged since the passage of the original version of the Freedom of Information Act in 1966. P.L. 89-487, 80 Stat. 250 (1966). House Report No. 1497 noted that governmental agencies such as the Veterans Administration, the Department of Health, Education, and Welfare, and others had accumulated large quantities of files which contained intimate personal details of people's private lives. The Report explained that:
 
 
 34
 "The limitation of a 'clearly unwarranted invasion of personal privacy' provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information by excluding those kinds of files, the disclosure of which might harm the individual."
 
 
 35
 Reprinted at 1966 U.S.Code Cong. and Admin.News, pp. 2418, 2428.
 
 
 36
 The concept of a "proper balance" between competing privacy and disclosure has been taken literally by the courts. In Department of the Air Force v. Rose, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the Supreme Court noted that a "balancing" was what Congress had in mind when it created exemption (b)(6). Lower federal courts have been more explicit in developing a balancing test under (b)(6). In Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670 (D.C.Cir. 1971), the court held that, on balance, the names and telephone numbers of persons entitled to vote in a union election were not exempt under (b)(6). The Getman court balanced the public interest in disclosure, the potential harm from disclosure, the minimal nature of the privacy intrusion, and the lack of any alternative means of obtaining the information. See 146 U.S.App.D.C. 209, 213, 214, 215, 450 F.2d 670, 674, 675, 676. The court in Rural Housing Alliance v. United States Department of Agriculture, 162 U.S.App.D.C. 122, 498 F.2d 73 (D.C.Cir. 1974), spelled out the balancing test for exemption (6) in detail:
 
 
 37
 "(Discussing Getman, supra ) Specifically we suggested that in balancing interests the court should first determine if disclosure would constitute an invasion of privacy, and how severe an invasion. Second, the court should weigh the public interest purpose of those seeking disclosure, and whether other sources of information might suffice. Such balancing is unique for exemption 6; normally no inquiry into the use of information is made, and the information is made available to any person."
 
 
 38
 162 U.S.App.D.C. 122, 126, 498 F.2d 73, 77.
 
 
 39
 The weight of the authority among the various circuits is clearly in accord with the "balancing" rationale. See Pacific Molasses Co. v. N. L. R. B., 577 F.2d 1172 (5th Cir. 1978) (union preference cards signed by employees exempt); Committee on Masonic Homes, etc. v. N. L. R. B., 556 F.2d 214 (3d Cir. 1977) (union preference cards exempt since little public interest in disclosure and great potential for "chilling effect" in exercise of union privileges if disclosure takes place); Columbia Packing Co., Inc. v. U. S. Dept. of Agriculture, 563 F.2d 495 (1st Cir. 1977) (privacy interest in personnel files outweighed by public interest in performance of government meat inspectors suspected of accepting bribes); Campbell v. United States Civil Service Commission, 539 F.2d 58 (10th Cir. 1976) (privacy interest in personnel files of government employees who were erroneously classified not outweighed by public interest in smooth operation of Civil Service Commission); Wine Hobby, U. S. A. v. United States Internal Revenue Service, 502 F.2d 133 (3d Cir. 1974) (forms filed by persons seeking "family use" exception to alcohol production taxes exempt when balanced against the interest of a private firm in obtaining names of these persons for mailing list advertisement purposes). But see Robles v. E. P. A., 484 F.2d 843 (4th Cir. 1973).
 
 
 40
 The case law thus identifies four factors to be balanced in weighing a claim of exemption for a "clearly unwarranted invasion of personal privacy": (1) the plaintiff's interest in disclosure; (2) the public interest in disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternative means of obtaining the requested information. In weighing the factors, we keep in mind that the invasion of privacy must be "clearly" unwarranted.
 
 
 41
 For the privacy exemption to be applicable, the information must be contained in "personnel (or) medical files (or) similar files." 5 U.S.C. § 552(b)(6). A "similar" file is defined simply as a file which contains information similar to that found in a standard personnel file. See Pacific Molasses Co., Inc. v. N. L. R. B., 577 F.2d 1172 (5th Cir. 1978) (information contained on union preference cards signed by employees found to be of a sufficiently "personal" nature to qualify the cards as "similar" files); Rural Housing Alliance v. United States, 162 U.S.App.D.C. 122, 498 F.2d 73 (D.C.Cir. 1974) (government report on housing discrimination found to qualify as a "similar file" because of information concerning marital status, legitimacy of children, medical condition, etc. of individual homeowners).
 
 C. Application of the Exemption
 
 42
 On the threshold issue of whether the documents at issue here qualify as "personnel," "medical," or "similar" files, we find that each of the documents may be classified as protected files. Each contains a sufficient amount of personal information to merit consideration for exemption (6) status.
 
 
 43
 Applying the balancing test to the portion of Document Nos. 3 and 4 in Department of Defense for which exemption (6) is claimed, we find no error committed. The Document No. 3 security background information involves various details of employment and personal history of the subject individual. Release of the bulk of the exempt portions of this document would tend to identify the individual[4] and to reveal details of this individual's life which are clearly exempt under current case law. Other deleted portions of Document No. 3 would tend to identify certain individuals who are associated with the Church, and various positions which they have held in the Church and affiliated organizations. On balance, we cannot say that the court erred in upholding the government's excision of the information pertaining to Church personnel. A reasonable person would be very likely to find that disclosure of religious affiliations and activities would constitute an invasion of his or her privacy. Additionally, the Church can obtain this information simply by checking its own membership and personnel files. There is no reason in this case to order public disclosure of such information. Disclosure of Document No. 4 would clearly constitute an unwarranted invasion of personal privacy. The deleted information pertains only to the name, address, and employment of a certain individual, and also describes an incident in the individual's life that the individual would apparently prefer not to disclose publicly. There could be no legitimate public purpose served by disclosure of this information.
 
 
 44
 The Church's purpose in seeking the excised information in Document Nos. 3 and 4 can only be surmised, but must be considered under current case law. In all likelihood, the Church's purpose in seeking government files pertaining to its activities is to discover whether it is under any investigation, or what sort of information the government might be accumulating for purposes which the Church may or may not consider legitimate. The Church may harbor some very real fears as to the motives of various agencies in gathering such information. The information which has been released in each of the two Department of Defense cases adequately apprises the Church of the type of information gathered. In neither case do we find that any more information than necessary to protect the privacy of the individuals involved has been excised.
 
 
 45
 Document Nos. 3, 4, 5 and 6 in Department of the Army were also properly excised. The four documents are interrelated as pertinent to the investigation of one individual. In no instance has any more information than is necessary to protect the identity, employment, and private life of the subject individual been excised. The factors considered with regard to the documents in Department of Defense are also relevant here. The Church's legitimate purposes in seeking the information are clearly outweighed by the subject individual's privacy interest.
 
 
 46
 Document No. 4 in Department of the Army bears special consideration because some of the deleted information does not relate to the subject individual, but to members of the Church. Again, the balance strikes in favor of the privacy interest. There is no purpose to be served by disclosure, and the Church may obtain the information by other means, such as consulting its own records. If any individual members of the Church fear that they have been subjected to surveillance, it is they who should seek disclosure, and not the Church.
 
 
 47
 VII. INVESTIGATORY FILES COMPILED FOR A LAW ENFORCEMENT PURPOSE
 
 
 48
 Certain portions of Document No. 3 in Department of Defense were excised on the authority of exemption (b)(7)(D), the "law enforcement" exemption to disclosure under the Freedom of Information Act. In its entirety, (b)(7)(D) exempts:
 
 
 49
 "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, . . ."
 
 
 50
 5 U.S.C. § 552(b)(7)(D).
 
 
 51
 The threshold issue in any exemption (7) claim is whether the agency involved may properly be classified as a "law enforcement" agency. The term "law enforcement purpose" has been construed to require an examination of the agency itself to determine whether the agency may exercise a law enforcement function. Irons v. Bell, 596 F.2d 468, 474 (1st Cir. 1979). An agency which has a clear law enforcement mandate, such as the FBI, need only establish a "rational nexus" between enforcement of a federal law and the document for which an exemption is claimed. Id. at 472. However, an agency which has a "mixed" function, encompassing both administrative and law enforcement functions, must demonstrate that it had a purpose falling within its sphere of enforcement authority in compiling the particular document.[5] Id. at 473. See also Weissman v. Central Intelligence Agency, 184 U.S.App.D.C. 117, 565 F.2d 692 (D.C.Cir. 1977).
 
 
 52
 In the case of Document No. 3, we do not find sufficient evidence in the record to warrant a finding that the Naval Investigative Service (NIS) of the Office of Naval Intelligence had a law enforcement purpose based upon properly delegated enforcement authority. While the NIS was clearly within its rights to conduct the investigation which produced Document No. 3, there is no showing that the investigation involved the enforcement of any statute or regulation within the authority of the NIS. In determining whether a "law enforcement purpose" is present, courts must look to the purpose behind the compilation of the document. Rural Housing Alliance v. United States Department of Agriculture, 162 U.S.App.D.C. 122, 129, 130, 498 F.2d 73, 80, 81 (D.C.Cir. 1974). The agency must show that the files " . . . were compiled For adjudicative or enforcement purposes." Id., at 129, 498 F.2d at 80. (Emphasis in the original). Generally, files such as "internal audits" compiled simply to determine whether an agency's internal operations comport with statute or regulation do not qualify. Id. at 130, 498 F.2d at 81. See also Center for National Policy Review on Race and Urban Issues v. Weinberger, 163 U.S.App.D.C. 368, 502 F.2d 370 (D.C.Cir. 1974).
 
 
 53
 In the case of Document No. 3, exemption (7)(D) only is claimed for a passage which appears approximately halfway down page 1, following an unexcised sentence which reads, " 'the HUBBARD ASSOCIATION OF SCIENTOLOGISTS (HASI), where Subject lists attendance, is a black-mailer's paradise.' " Deleted is the sentence immediately following "black-mailer's paradise," and a short phrase preceding the unexcised sentence which identifies the source of the information. The same passage is repeated on page 3, page 6, and again on three supplementary pages which are copies of an investigation request. (7)(D) is also claimed for a passage at the top of page 4, two deletions at the bottom of page 4, two deletions at the top of page 5, and one deletion midway through page 7. In addition, one seven-page set of attachments was deleted in its entirety, and it was not clear whether exemption (b)(7) was claimed for the attachment set. We surmise that (b)(7) was the basis for deletion of the attachment, without implying any judgment on the correctness of such an assertion.
 
 
 54
 While we find insufficient evidence to justify upholding exemption (b)(7) for those portions of Document No. 3 mentioned above, we do not reverse the district court outright on this issue. Much of the deleted information is of a highly sensitive nature, and we believe it appropriate to remand for further findings. On remand, the district court should inquire into questions of NIS' law enforcement authority, and whether the document was compiled for a law enforcement purpose. Any findings on these issues should be as detailed as possible without compromising the secrecy of the information. The court should also give serious consideration to the applicability of any other exemptions.[6]
 
 VIII. COMITY
 
 55
 The district court declined to release Document No. 2 in Department of the Army because that document was the subject of pending litigation in federal district court for the District of Columbia, The Founding Church of Scientology of Washington, D.C. v. Edward H. Levy, et al., Civil Action No. 75-1577. That litigation has since progressed considerably. On January 24, 1978, the D.C. district court granted the defendants' motion for summary judgment. On June 25, 1979, the court of appeals for the District of Columbia Circuit handed down its decision in Founding Church of Scientology of Washington, D.C. v. Bell, 195 U.S.App.D.C. 363, 603 F.2d 945, reversing the district court's decision, and remanding for further consideration.
 
 
 56
 In deferring to the jurisdiction of another district court, the court below invoked the doctrine of federal comity, a discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district. See Kerotest Manufacturing Company v. C-O-Two Fire Equipment Company, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). In its classic formulation, the comity doctrine permits a district court to decline jurisdiction over a matter if a complaint has already been filed in another district. E. g., Great Northern Railway Co. v. National Railroad Adjustment Board, 422 F.2d 1187, 1193 (7th Cir. 1970). The Church's complaint in Department of the Army was filed on September 9, 1975. The complaint in the D.C. litigation was filed on September 26, 1975. Technically, therefore, the comity doctrine is inapplicable and the court below improperly refused to determine the exempt status of Document No. 2.
 
 
 57
 When considering issues raised by the comity doctrine, however, courts are not bound by technicalities. The Supreme Court in Kerotest Manufacturing Company, supra, noted that the handling of multiple litigation involving the same subject matter does not lend itself to " . . . rigid mechanical solution. . . . " 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200. Citing Kerotest Manufacturing, the Eighth Circuit observed in Florida v. United States, 285 F.2d 596 (8th Cir. 1960) that "(t)here is no rigid or inflexible rule for determining priority of cases pending in federal courts involving the same subject matter."
 
 
 58
 The purpose of the comity principle is of paramount importance. The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments. Great Northern Railway Co. v. National Railroad Adjustment Board, 422 F.2d 1187, 1193 (7th Cir. 1970). Comity works most efficiently where previously-filed litigation is brought promptly to the attention of the district court, and the court defers. In the present case, the litigation in the D.C. Circuit has already progressed to a judgment on the merits, an appeal, and a remand. While judicial economy would have been best served by the district court in D.C. deferring to the Central District of California at the outset, we cannot now say that efficiency demands that we remand to the district court below. Under the circumstances, the goal of judicial efficiency will be best met if we overlook the "first to file" rule, and defer to the litigation in progress in the D.C. Circuit.
 
 
 59
 The need for fashioning a flexible response to the issue of concurrent jurisdiction has become more pressing in this day of increasingly crowded federal dockets. Our own circuit recently addressed this issue in another context. Speaking in Crawford v. Bell, 599 F.2d 890 (9th Cir. 1979), we noted that:
 
 
 60
 " . . . increasing calendar congestion in the federal courts makes it imperative to avoid concurrent litigation in more than one forum whenever consistent with the rights of the parties. A court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result."
 
 
 61
 Id. at 893.
 
 
 62
 We emphasize that the "first to file" rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly. Cf. Motor Vessels Theresa Ann v. Kreps, 548 F.2d 1383, 1384 (9th Cir. 1977). Circumstances and modern judicial reality, however, may demand that we follow a different approach from time to time, as we do in the present case.[7]
 
 IX. COLLATERAL ESTOPPEL
 
 63
 With regard to Document No. 1 in Department of the Army, the district court abstained from ruling because the document was the subject of concurrent litigation in the district court for the District of Columbia in Church of Scientology of California v. Department of the Air Force, et al., Civil Action No. 76-1008. On April 12, 1978, the court ruled in Department of the Air Force that Document No. 1 was exempt from disclosure. We conclude that the Church is estopped from raising the issue of the document's exempt status in this litigation.
 
 
 64
 There really is no question that the same issue was involved in Department of the Air Force, namely, the exempt status of Document No. 1. Nor is there any question that the Church was the plaintiff in both cases. Under such circumstances, the issue of exemption cannot be relitigated. See, e. g., Parklane Hosiery Co. v. Shore, 439 U.S. 332, 99 S.Ct. 645, 58 L.Ed.2d 552, 559, n. 5 (1979).
 
 
 65
 Both cases AFFIRMED in part, and REVERSED and REMANDED in part, for further proceedings consistent with this Opinion.
 
 
 
 *
 The Honorable Elbert Parr Tuttle, Senior Circuit Judge, United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 [1]
 The Senate Conference Report on P.L. 93-502 commented on the significance of the mandate to conduct In camera review in this manner:
 "(w)hile In camera examination need not be automatic, in many situations it will plainly be necessary and appropriate. Before the court orders In camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure. The burden remains on the Government under this law." S.Conf.Rep.No. 93-1200, 93rd Conf., 2d Sess. (1974), Reprinted in 1974 U.S.Code Cong. & Admin.News, pp. 6267, 6285, 6287, 6288.
 
 
 [2]
 In its memorandum opinion, the district court made the following findings with regard to Document No. 5:
 "Document No. 5 is a 2-page naval message from Commander-in-Chief U.S. Naval Forces Europe to U.S. Defense Attache Copenhagen, date-time group 1016442 FEB 71. This message has been entirely withheld by the defendants and the court finds that the withholding is lawful pursuant to the provisions of 5 U.S.C. §§ 552(b)(1) and (b)(7)(D) in that it is classified confidential and determination of this classification was made in the interest of national defense under Executive Order No. 11652 of 8 March 1972. The message is an investigatory record compiled for law enforcement purposes, the release of which would disclose the identity of confidential sources by an agency conducting a lawful national security investigation and would disclose confidential information furnished only by confidential sources."
 
 
 [3]
 Even though we have been supplied with an unexpurgated copy of Document No. 5, we decline to attempt any judgment on segregability. Not only is our scope of review limited on appeal, but we also find it important that evidence be submitted to the court bearing directly on the issue of segregability. See Founding Church of Scientology of Washington, D. C. v. Bell, 195 U.S.App.D.C. 363, 369, 603 F.2d 945, 951 (D.C.Cir. 1979)
 
 
 [4]
 The Church cites Ferguson v. Kelley, 448 F.Supp. 919 (D.C.D.C.1978), for the proposition that there is no primary interest in disclosure of a name. The case is not merely so broad, however. It merely holds that the names of FBI agents are not barred from disclosure unless some threat to personal safety may be discerned
 
 
 [5]
 The Department of Defense has cited Koch v. Department of Justice, 376 F.Supp. 313 (D.C.D.C.1974), in which files similar to those at issue here were held to have been properly withheld under exemption (7). Koch, however, is not persuasive because the agency involved was the FBI, for whom a separate showing of "law enforcement purpose" is unnecessary. Citation to Koch appears to beg the primary question here, namely, whether the Department of Defense may claim a law enforcement purpose in the first instance
 
 
 [6]
 We have also remanded Document No. 5 in Department of Defense for further consideration on the segregability issue under exemption (b)(1). Should the court rule adversely to the government on that question, it should also consider exemption (b)(7) for Document No. 5. The possibility of revelation of a confidential source was apparently critical for the government in determining that no portion of the document could be segregated. See Affidavit of Rear Admiral B. R. Inman, U. S. Navy, Director of Naval Intelligence and Commander, Naval Intelligence Command, p. 4 (C.R. 222, 225)
 
 
 [7]
 The Church characterized the district court's deference to concurrent litigation on both Documents No. 1 and No. 2 in Department of the Army as an impermissible judicial creation of a new exemption to the Freedom of Information Act's disclosure requirement. We disagree. While it is true that the Act forbids the equitable creation of exemptions which are not specified, Wellman Industries, Inc. v. N. L. R. B., 490 F.2d 427 (4th Cir. 1974), it does not prohibit the application of traditional judicial doctrines to the overall administration of the Act. See Renegotiation Board v. Bannercraft Co., 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). Application of the comity doctrine where the plaintiff is pursuing its rights under the Act in another forum, and where the plaintiff is afforded a full and fair opportunity to be heard in the other forum, is not inconsistent with the purpose of the Act. Cf. Consumers Union of U. S. v. Consumer Product, etc., 192 U.S.App.D.C. 93, 590 F.2d 1209 (D.C.Cir. 1978); Robertson v. Department of Defense, 402 F.Supp. 1342 (D.C.D.C.1975)