**COLORTYME FINANCIAL SERVICES, INC., Plaintiff,**

v.

**KIVALINA CORPORATION, Defendant.**

**Civil No. 95–00829 ACK.**

United States District Court,
D. Hawai'i.

Feb. 16, 1996.

Elizabeth A. Schaller, Wagner, Watson & Pettit, Honolulu, HI, for plaintiff.

Timothy J. Hogan, Lynch & Farmer, Honolulu, HI, Russell Yager, Dallas, TX, Barry C. Barnett, Dallas, TX, for defendant.

## ORDER TRANSFERRING CASE

KAY, Chief Judge.

### BACKGROUND

On August 31, 1995, defendant Kivalina Corporation and others filed suit in federal district court in the Northern District of Texas against plaintiff Colortyme Financial Services, Inc. ("CFS"), its parent company Colortyme, Inc. ("Colortyme"), and others (the "Texas action"). The amended complaint in this action alleges RICO, fraud and conspiracy to violate the Sherman Act and the Texas Business Opportunities Act in connection with certain franchise agreements entered into between Colortyme, as franchisor, and certain plaintiffs in the Texas action, including defendant Kivalina. Kivalina and other franchisee plaintiffs in the Texas action claim they were fraudulently induced to enter into their franchise agreements and into other transactions from which certain debts to CFS arose.

On October 10, 1995, plaintiff CFS filed the instant action in Hawaii, alleging that defendant Kivalina owes CFS $245,823.63 pursuant to a promissory note secured by certain collateral and seeking to foreclose on that collateral.

On October 13, 1995, CFS and Colortyme filed an answer, counterclaim and third-party complaint in the Texas action. *See* Motion, Exh. I. Their counterclaim alleges, *inter alia,* that "Kivalina currently owes ... a promissory note balance of $245,823.63" to CFS and that Kivalina's failure to pay the note constitutes a breach of the franchise agreement between Kivalina and Colortyme. *Id.* at ¶¶ 39, 46–47.

On November 2, 1995, defendant Kivalina filed a motion to dismiss this action under Federal Rule of Civil Procedure 13(a) in favor of the prior pending Texas action, or alternatively, to transfer this action to the Northern District of Texas. Kivalina contends the claims in CFS' instant action are compulsory counterclaims in the Texas action.

On February 13, 1996, the Court heard Kivalina's motion. Both sides appeared through counsel. Upon considering the papers filed by the parties, the arguments at the hearing, and the record, the Court hereby GRANTS Kivalina's motion and TRANSFERS this action to the Northern District of Texas.

### FACTS

#### I. TEXAS ACTION

Colortyme, the parent company of CFS, is a Texas corporation with its principal place of business in Texas. Colortyme is a franchisor of rent-to-own stores in the United States and sells franchises, inventory and "dealer support" materials to its franchisees. CFS, also a Texas corporation with its principal place of business in Texas, is a wholly owned subsidiary of Colortyme which loans money and provides inventory financing to Colortyme franchisees. Until early 1995, Colortyme also generated revenue through another wholly-owned subsidiary, Colortyme Life Insurance Company ("CLIC"), which sold credit life insurance to the rent-to-own cus-

tomers of Colortyme franchisees. CLIC ceased operations in early 1995. Other defendants in the Texas action are present and former shareholders, officers and/or directors of Colortyme residing in Texas and other states.

The plaintiffs in the Texas action are several Colortyme franchisees and their individual owners and shareholders. The individual plaintiffs guaranteed the performance of their respective franchises under franchise agreements with Colortyme. The Hut Company, Inc., a Missouri corporation with its principal place of business in Missouri, owns five rent-to-own stores in Arkansas and Missouri. TSK Enterprises, Inc., a Utah corporation with its principal place of business in Utah, owns two rent-to-own stores in Utah. Far North Ventures, Ltd., an Alaska corporation with its principal place of business in Alaska, owns two rent-to-own stores in Alaska. Finally, Kivalina Corp., the defendant in the instant action, is an Alaska corporation[1] which owns one rent-to-own store in Hawaii.

The First Amended Complaint in the Texas action alleges that plaintiffs in that action entered into franchise agreements with Colortyme in reliance on intentionally false representations contained in franchise offering circulars distributed by Colortyme. Texas First Am. Compl. at ¶¶ 24, 76. Specifically, in April 1993, Kivalina, allegedly in reliance on such circulars, entered into a purchase agreement with Colortyme for the purchase of an existing Colortyme store located at 935 Dillingham Boulevard in Honolulu, Hawaii. *Id.* at ¶¶ 70, 76, 90. Pursuant to that purchase agreement, the franchise agreement relating to that store was assigned to Kivalina. *Id.*

The Texas complaint also alleges that CFS, by virtue of its "practical identity" with its parent Colortyme, knowingly participated in the fraudulent conduct of Colortyme, including fraudulent markups of inventory and fraudulent customer allocation/market division agreements, and knowingly made material misrepresentations relating to credit pur-

chases by the franchisee plaintiffs, including Kivalina. *Id.* at ¶¶ 104, 112–13, 115–16, 248 (alter ego).

The Texas complaint alleges causes of action for civil RICO; combination, contract or conspiracy in restraint of trade in violation of the Sherman Act; violations of the Texas Business Opportunities Act; common-law fraud; breach of contract; breach of fiduciary duty; civil conspiracy; accounting; constructive trust; declaratory judgment that the franchise agreements and guarantees are unenforceable; rescission of the franchise agreements and guarantees; and an injunction against any attempt by Colortyme or CFS to enforce such guarantees.

## II. *HAWAII ACTION*

The parties in the instant action in Hawaii are CFS as plaintiff and Kivalina as defendant. On October 10, 1995, CFS filed suit in Hawaii against Kivalina to foreclose on collateral located in Hawaii securing a promissory note dated April 1, 1995, in the principal sum of $255,278.38, executed by Kivalina in favor of CFS. *See* Hawaii Complaint, Exhs. A (security agreement for business inventory), B (pledge and security agreement) and C (promissory note).

CFS alleges that Kivalina is in default under the note and related agreements for failing to furnish to CFS various monthly and other financial reports and for failing to make its principal payment on the promissory note due May 15, 1995. CFS seeks to accelerate the amount due under the promissory note and to foreclose on the collateral securing that note. *See* Haw.Compl. at ¶¶ 8, 14, 17, 19.

## *DISCUSSION*

### I. *LAW*

Federal Rule of Civil Procedure 13(a) provides in part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any op-

---

1. The parties disagree over whether Kivalina has its principal place of business in Alaska or Hawaii. *Compare* Texas First Amended Complaint, Motion, Exh. E at ¶ 16 (Alaska) *with* Hawaii

Complaint at ¶ 2 (Hawaii). However, inasmuch as CFS is a Texas citizen, diversity in the instant action would exist either way, and the discrepancy does not otherwise appear to be relevant.

posing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ...

■ In the Ninth Circuit, a counterclaim is compulsory if there is any "logical relationship" between the claim and the counterclaim. *See Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir.1987) (federal courts apply the "liberal 'logical relationship' test to determine whether two claims arise out of the same 'transaction or occurrence'"); *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974) ("'[T]ransaction' is a word of flexible meaning which may comprehend a series of occurrences if they have logical connection...."); *see also Albright v. Gates*, 362 F.2d 928, 929 (9th Cir. 1966) (noting "increasingly liberal construction" of Rule 13); *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962) (Rule 13 "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters."); *cf.* 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1410, pp. 52–55 (1990) (courts have held that relevant inquiries may also include (1) whether the issues of fact and law raised by the claim and counterclaim largely the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; and (3) whether substantially the same evidence supports or refutes plaintiff's claim as well as defendant's counterclaim).

■ It is well established that an action may not be maintained where the claims asserted should have been brought as compulsory counterclaims in a prior completed action. *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 275 n. 4 (1980); *Springs v. First Nat'l Bank of Cut Bank*, 835 F.2d 1293, 1295 (9th Cir.1988); *see also* 6 *Wright, Miller & Kane* § 1417, p. 129 (1990).

■ But what if the prior action is pending? In this case, the "first-to-file" rule (also called the "first-filed" or the "prior pending action" rule) dictates that, in the absence of "exceptional circumstances," the later-filed action should be stayed, transferred or dismissed with leave to plead the counterclaims in the prior pending action. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir.1982) ("There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."); *Church of Scientology of California v. United States Dept. of Army*, 611 F.2d 738, 749–50 (9th Cir.1979) ("[T]he doctrine of federal comity [is] a discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district.... The purpose of the comity principle is of paramount importance. The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.... '[T]he first to file rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly.'"); *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 972 (3d Cir.1988) (first-filed rule should not be departed from except in cases of "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping"); *Adam v. Jacobs*, 950 F.2d 89, 94 (2d Cir.1991) (vacating district court judgment under Rule 13 and prior pending action rule for failing to dismiss action as compulsory counterclaim in favor of prior pending action); *Banner Indus. of New York, Inc. v. Sansom*, 830 F.Supp. 325, 328 (S.D.W.Va.1993) (dismissing action as compulsory counterclaim); 6 *Wright, Miller & Kane* § 1418, pp. 143–45 (1990) ("Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action.") (footnotes omitted).[2]

**2.** Dismissal pursuant to the "first-to-file" rule does not require an antecedent finding that the claims in the later-filed action are compulsory counterclaims in the earlier-filed action. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94 (1982) (court noted two actions were "essen-

Whether claims constitute compulsory counterclaims is a matter of law reviewed *de novo*. *Springs v. First Nat'l Bank of Cut Bank*, 835 F.2d 1293, 1295 (9th Cir.1988). However, a district court's "decision to accept or decline jurisdiction based on the first-to-file rule [is reviewed] for abuse of discretion." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir.1991) (citing *Pacesetter Sys.*).

## II. APPLICATION

Two questions are raised here: (1) whether the instant action is a compulsory counterclaim in the Texas action; and (2) whether the instant action should be dismissed or transferred pursuant to the first-to-file rule. The Court answers both in the affirmative.

### A. Compulsory Counterclaim

Under the Ninth Circuit's liberal "logical relationship" test for compulsory counterclaims, the Court finds that the instant action for breach of the promissory note and foreclosure of collateral is logically related to the claims in the Texas action. The promissory note and related agreements arose from Kivalina's franchise agreement and relationship with Colortyme and CFS. CFS, Colortyme's wholly owned financing subsidiary (and alleged alter ego), loaned Kivalina money specifically so that Kivalina could purchase inventory for its own Colortyme rent-to-own store.

Kivalina's franchise relationship with Colortyme is of course the subject of the Texas action. The franchisee plaintiffs in that action (including Kivalina) allege, among other things, that Colortyme fraudulently marked up the inventory sold to the franchisees and unlawfully entered into customer allocation/market division agreements with manufacturers of "approved" products, thereby unlawfully preventing the franchisees from dealing directly with those manufacturers. It is clear that recovery of debts incurred by the franchisees pursuant to their franchise relationships with Colortyme and CFS is log-

ically related to the franchise relationships themselves.

Accordingly, the Court finds that the instant action is a compulsory counterclaim in the Texas action. *See, e.g.,* *G & M Tire Co. v. Dunlop Tire & Rubber Corp.*, 36 F.R.D. 440, 441 (N.D.Miss.1964) (manufacturer's claim against distributor on note dismissed as compulsory counterclaim to distributor's prior-filed antitrust action); *Park Club, Inc. v. RTC*, 967 F.2d 1053, 1057–58 (5th Cir.1992) (lender's claims for sums due under note and guarantees compulsory counterclaims to borrower's action for breach of contract); *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 276–77 (6th Cir.1991) (borrower's claims against bank for fraud, duress and violations of Bank Holding Company Act compulsory counterclaims to bank's claims against borrower on notes and guarantees); *Bottero Enter., Inc. v. Southern New England Prod. Credit Ass'n*, 743 F.2d 57, 58–59 (1st Cir. 1984) (borrower's action for breach of contract underlying note and security interest compulsory counterclaim to lender's action to foreclose on collateral); *Reconstruction Fin. Corp. v. First Nat'l Bank of Cody*, 17 F.R.D. 397, 403–04 (D.Wyo.1955) (lender's claims against borrower that lender was fraudulently induced as part of a conspiracy to make loans to borrower were compulsory counterclaims in prior action brought against lender and borrower by borrower's alleged co-conspirator to defeat lender's lien against borrower's assets).

### B. First–To–File

Under the "first-to-file" rule, in the absence of "exceptional circumstances" warranting a departure from that rule, this action should be dismissed or transferred in favor of the Texas action.

In *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir.1982), the Ninth Circuit approved the district court's application of the first-to-file rule where the California district court dismissed a later-filed action in favor of a prior pending action in a Florida district court involving the same issues of

tially identical" but did not discuss Rule 13); *Church of Scientology of California v. United States Dept. of Army*, 611 F.2d 738, 749 (9th Cir.1979) (discussing comity doctrine in iso-

lation). Thus, the first-to-file rule can operate either independently or in conjunction with Rule 13(a).

validity and enforceability of certain patents. The Ninth Circuit stated:

> We agree with the district court that the goal of judicial efficiency would not have been served by accepting jurisdiction.... [P]ermitting multiple litigation of these identical claims could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability was clear. No apparent bar existed to a presentation of Pacesetter's claims and defenses before the Florida court. That forum was capable of efficiently resolving all issues, and economic use of both courts' resources resulted from the California court's refusal to consider Pacesetter's claims.

*Id.* at 96; *Church of Scientology of California v. United States Dept. of Army*, 611 F.2d 738, 749–50 (9th Cir.1979) ("[T]he doctrine of federal comity [is] a discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district.... The purpose of the comity principle is of paramount importance. The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.... [T]he 'first to file' rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly.").

Here too, the Court finds that judicial efficiency and avoidance of duplicative litigation would not be served by accepting jurisdiction of the instant action, which simply is a small and interrelated part of the whole litigation in Texas over the legality and enforceability of the various franchise relationships and agreements between Colortyme/CFS and their franchisees, including Kivalina. Permitting the instant action to proceed would risk conflicting determinations—for instance, the Texas action might result in rescission of the promissory note and related agreements that are the subject of the instant action.

Moreover, no apparent bar exists to CFS pursuing its claims in the Texas action, which apparently it already is doing via its counterclaims in that action.[3] Accordingly, identical issues have been raised in both actions, the issues relating to the instant action are properly before the Texas court (which is fully capable of efficiently resolving all issues raised in both actions), and there they should stay. *See Church of Scientology*, 611 F.2d at 749 (district court may "decline judgment on an issue which is properly before another district"). Interests of judicial administration thus strongly favor dismissal or transfer and no exceptional circumstances exist to indicate otherwise.

Here, in light of the status of this action, the Court finds that transfer is the appropriate alternative.[4] Kivalina's request at the

**3.** CFS' claim in its Supplemental Memorandum that the Texas court would lack jurisdiction to appoint a receiver over property in Hawaii is meritless. *See* 28 U.S.C. § 754 ("A receiver appointed in any civil action or proceeding involving property ... situated in *different districts* shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.... Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for *each district* in which property is located.") (emphasis added); 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2985 at 38–39 (1973) ("Among other things, this means that state or federal courts located in other districts may not exercise any control over defendant's property within *their* territorial jurisdiction or over the receiver....") (emphasis added).

**4.** The Court notes transfer is also appropriate under 28 U.S.C. § 1404(a). The Northern Dis-

trict of Texas is one in which this Hawaii action could have been brought. *See Tomar Electronics, Inc. v. Whelen Technologies, Inc.*, 819 F.Supp. 871, 877 (D.Ariz.1992); *A.J. Indus., Inc. v. United States Dist. Court for Central Dist. of California*, 503 F.2d 384, 387 (9th Cir.1974). Venue there would have been proper. *See* Hawaii Complaint, Exh. C (promissory note) at 3 ("This Agreement is being executed and delivered in, and is intended to be performed in, the State of Texas, and the laws of the State of Texas shall govern the validity, construction, enforcement and interpretation of this Agreement."); *see also* 28 U.S.C. § 1391 (venue proper where "a substantial part of the events or omissions giving rise to the claim occurred"); *ABC Rental Sys., Inc. v. Colortyme, Inc.*, 893 F.Supp. 636 (E.D.Tex.1995) (in related suit by another franchisee, district court in Eastern District of Texas granted defendants' motion to transfer venue to Northern District).

In addition, the statutory factors and private and public interest factors favor transfer. *See Decker Coal Co. v. Commonwealth Edison Co.*,

hearing that the Court first rule on its appeal of the Magistrate's order striking its demand for jury trial is denied. Counsel for Kivalina represented at the hearing that the Texas action and others recently have been consolidated before a single judge in the Northern District of Texas. Kivalina may appeal the Magistrate's order to that judge, who presumably will be the one actually presiding over the case and who is in a far better position to evaluate the extent to which the consolidation affects Kivalina's demand.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion and TRANS-FERS this case to the Northern District of Texas.

IT IS SO ORDERED.

805 F.2d 834, 843 (9th Cir.1986) (*forum non conveniens* considerations helpful in deciding § 1404(a) transfer motion; court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum"). That the collateral is in Hawaii favors litigation here. However, it appears that witnesses to the formation, validity and enforceability of the promissory note and related agree-ments would be less inconvenienced by litigation in Texas. In addition, familiarity with governing law (that of Texas) and avoiding conflicting judgments also are factors which favor Texas. Finally, and most importantly, here there can be no argument that it would be inconvenient for CFS, a Texas citizen, to litigate in Texas, especially where it already is embroiled in litigation there.