**EAGLE–PICHER INDUSTRIES, INC., Plaintiff,**

v.

**AMERICAN EMPLOYERS INSURANCE COMPANY, et al., Defendants.**

Civ. A. No. 82–1841.

United States District Court, District of Columbia.

Jan. 28, 1983.

Scott R. Schoenfeld, Nutter, McClennen & Fish, Richard H. Gimer, M. Stuart Madden, Santarelli & Gimer, Washington, D.C., Ralph Boccarosse, Jr., Siciliano, Ellis, Sheridan & Dyer, Fairfax, Va., Charles R. Parrott, Brian T. Kenner, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

James P. Schaller, Elizabeth Medaglia, Jackson, Campbell & Parkinson, Washington, D.C., George Marshall Moriarty, Kenneth W. Erickson, Ropes & Gray, Boston, Mass., Thomas M. Susman, Ropes & Gray, Washington, D.C., Malcolm B. Rosow, Lewis Herman, Arthur J. Liederman, Standard, Weisberg, Heckerling & Rosow, New York City, John Lockie, Robert Damus, June Rose Carbone, Attys., Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM

GESELL, District Judge.

The question before the Court is whether or not this civil declaratory judgment action should be transferred to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). Defendants support transfer and plaintiff opposes. The matter of transfer was originally raised by the Court *sua sponte* and at the Court's request has now been fully briefed. *Starnes v. McGuire,* 512 F.2d 918, 934 (D.C. Cir.1974). The Court acted before answers after gaining considerable background knowledge of the facts and issues in the case by reason of heavily documented preclusion motions still awaiting disposition after briefing and argument.[1]

Eagle-Picher, the plaintiff, is an Ohio corporation with its principal offices in Ohio. It is presently a defendant in several thousand asbestos-related tort claims. It has been seeking declaratory judgments as to the scope and nature of its insurance coverage against those claims as its exposure

---

1. Moreover, after filing of the complaint in the District of Columbia the federal defendant has been dismissed and another defendant, Pruden- tial Life Insurance Company, which did not participate in the pretrial motions, has filed a statement of position.

mounts. With that in mind it commenced an action in the District of Massachusetts in 1978 against certain insurance companies carrying its primary and some of its immediate umbrella coverage. The litigation focused upon whether under the language of the policies coverage of asbestos-related injuries was to be determined by the time of asbestos exposure or actual manifestation of asbestosis symptoms. The District Court consistently interpreted each of the policy's language to adopt the manifestation theory. Dissatisfied with the result in the District Court, Eagle-Picher took an appeal to the First Circuit, which affirmed the District Court with only slight modification. *Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.,* 682 F.2d 12 (1st Cir.1982). Applications for certiorari to the Supreme Court are pending.

While the foregoing litigation was in progress, the United States Court of Appeals for the District of Columbia Circuit decided an analogous insurance coverage case, not involving Eagle-Picher, creating a different standard for interpreting insurance coverage of this general type. That standard provides coverage far broader than either of the traditional standards of exposure or manifestation. *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). Eagle-Picher immediately sought to have the District of Massachusetts and the Court of Appeals for the First Circuit adopt the *Keene* standard. Both Courts refused.

The present action, relating to immediate and secondary umbrella policies not adjudicated in Massachusetts, followed immediately. The same day the First Circuit rejected the *Keene* rule plaintiff filed here. The obvious and sole purpose of this tagalong action is to take advantage of the unique ruling of the District of Columbia Circuit and, in effect, collaterally to attack the result Eagle-Picher received in Massachusetts.

All the defendants in this new District of Columbia action have agreed to be bound by the policy interpretation adopted by the First Circuit, if it is not reversed by the Supreme Court, as to all of the policies whose interpretation is sought before this Court. Some defendants in this action are also seeking summary judgment on the ground that because the language of the policies before the First Circuit is functionally identical to the language at issue here, Eagle-Picher is precluded under the law of the First Circuit from seeking an interpretation different than that already established by final judgment in that Circuit. Those preclusion motions place this Court in the position of deciding what exactly the First Circuit decided, and whether that decision would be *res judicata* under the preclusion law of that Circuit as to the policies here at issue.

The facts which control the Court's exercise of its discretion in this instance are set forth below:

1. Eagle-Picher insured its primary risk against asbestos claims with Liberty Mutual. A series of first-tier umbrella policies, which would become applicable only when the Liberty Mutual coverage was exhausted, were written by American Employers, American Motorists, and the London Market. Beginning about the middle of 1973 it became clear that Eagle-Picher's asbestosis liability would be greater than anticipated and additional umbrella or excess coverage policies were written on top of the first two tiers by the London Market. Later further excess protection was written by Prudential, still later a further policy by the London Market, and finally yet another policy written by A.I.U. was pyramided on top, all within the period of mid-1973 and 1978. These policies track each others' language, are interrelated, often incorporate identical coverage language, and the entire insurance protection plan must be viewed as a whole.

2. Key language in some of the policies here at issue expressly incorporates language from subordinate policies that has already been interpreted by the District of Massachusetts and confirmed with a slight modification by the First Circuit. The language of the other policies at issue, although not identical, closely tracks that in-

terpreted by the First Circuit as adopting the manifestation theory.

3. Further proceedings arising out of the District of Massachusetts case involving counterclaims and cross-claims relating to the exhaustion of primary coverage are still pending in the District of Massachusetts.

4. Some of the defendants in the Massachusetts action are also defendants in the case before this Court.

5. The District of Massachusetts is the only District where all of Eagle-Picher's insurers can be reached to achieve identical interpretation of the coverage provisions. First State and Lexington, which were originally dismissed by Eagle-Picher in this case because it was unable to serve them in the District of Columbia and which it now seeks to bring in again, are available for suit in Massachusetts. Other insurers who are citizens of Massachusetts are not named in either case at the present time.

6. In deciding whether to grant defendants' preclusion motions, this Court must apply the preclusion law of the forum of the precluding decision.

7. The issues presented in the Massachusetts action are in many respects identical to the issues tendered in the District of Columbia. The Massachusetts District Court is thoroughly familiar with the facts and legal issues in this case. It also is best situated to evaluate the scope and meaning of the decisions already reached in the First Circuit, the very issue tendered to this Court by the preclusion motions. For example, the Massachusetts Court can best determine if Eagle-Picher enjoyed a full and fair opportunity to litigate its views in the Massachusetts action.

8. All defendants before this Court have agreed to be bound by the decision of the First Circuit regarding the Eagle-Picher coverage unless that decision is reversed by the Supreme Court. For this Court to reach a different interpretation of related coverage would create the need for still further protracted litigation.

9. Two different District Courts are being asked by Eagle-Picher to adjudicate closely related claims. An appendix submitted to this Court indicates that the Massachusetts District Court has developed eleven volumes of record on these issues in a controversy extending over several years.

10. Neither Eagle-Picher nor any of the defendants have any particular connection to the District of Columbia. None of these concerns have their principal office here. There is no indication that the insurance contracts were executed here.

11. Eagle-Picher initially chose the District of Massachusetts as the most convenient forum for it to litigate its insurance coverage claim and the District of Massachusetts is equally convenient to it.

12. Resolution of the controversy will be delayed if Eagle-Picher is allowed to proceed simultaneously in two or more circuits and the prospects of inconsistent judgments increased. The District of Massachusetts is in the best position to expedite the entire matter.

Clearly the interests of justice demand that this case be transferred to the District of Massachusetts in order to obtain as promptly as possible a single coherent, consistent judgment covering all insurers of Eagle-Picher's asbestos risks to the end that the rights of the plaintiffs who are suing Eagle-Picher and, in turn, Eagle-Picher's claims against its insurers can be decisively resolved. Public policy favors this result. The District of Columbia and the District of Massachusetts are equally convenient for Eagle-Picher.

The Court takes note of the fact that thousands and thousands of asbestos claims involving Eagle-Picher and other manufacturers are accumulating in federal and state courts throughout the land. Dockets are jammed and individual plaintiffs frustrated. No multi-district approach has been adopted. In those circumstances, the interests of justice require that the courts exercise their authority insofar as it exists to facilitate rather than to confuse the disposition of those claims. As far as the Eagle-Picher segment of this burgeoning litigation burden is concerned, the District of

228

Massachusetts is without question best qualified to achieve this result. That Court has already invested substantial time in the facts and issues of this case and it is against the interests of judicial economy for this Court to do the same.

Given the considerations which the Court has indicated, plus Eagle-Picher's initial choice of the District of Massachusetts as the proper venue to proceed in search of declaratory relief, its forum shopping for the sole purpose of attaching itself to a favorable inconsistent decision at a location where it has no significant interest whatsoever must be rejected. A consistent and prompt overall interpretation of Eagle-Picher's insurance coverage can only be reached in the First Circuit.

Accordingly, the Court has determined in its discretion that this matter shall be transferred to the District of Massachusetts in the interests of justice and with due regard for the convenience of the parties pursuant to 28 U.S.C. § 1404(a).