Michael P. TICE, et al., Plaintiffs,

v.

PRO FOOTBALL, INC., d/b/a Washington Redskins, et al., Defendants.

Civ. A. No. 91–2314 (RCL).

United States District Court, District of Columbia.

Feb. 10, 1993.

Joseph D. Yablonski, Daniel B. Edelman, John F. Colwell, Yablonski, Both & Edelman, Washington, DC, James W. Quinn, Weil, Gotshal & Manges, New York City, for plaintiffs.

Herbert Dym, Gregg H. Levy, Jeffrey Pasu, Covington & Burling, Washington, DC, for defendants.

MEMORANDUM OPINION AND ORDER FORTHWITH

LAMBERTH, District Judge:

This case is a putative class action in

which eleven professional football players [1] are suing the National Football League (NFL) and its twenty-eight member teams for anti-trust violations. The plaintiffs seek to represent a class of all professional football players who received less than their contract-based salary during the past several preseasons (due to the NFL's policy of paying all players a fixed salary during the preseason rather than their contract-based salary) and then were unable to make up the difference during the regular season because they were cut.[2]

After plaintiffs filed suit, the NFL filed a counterclaim in which it sought to certify a defendants' class of all players who received non-contractual benefits under the NFL's attested policy of following the CBA even after it expired in 1987. The counterclaim alleges that thousands of football players are liable for recoupment or restitution to their teams for such benefits as extra-contractual preseason compensation, post-season bonuses, and termination benefits. The court has not ruled on either plaintiffs' or defendants' motion for class certification.

During the last six years, various groups of players, often supported by the National Football League Players Association (NFLPA), have brought several lawsuits against the NFL, all challenging aspects of the NFL's player selection, retention, and compensation practices. Much of that litigation has been focused in this court,

where three cases have been filed; even more has centered around the United States District Court for the District of Minnesota and U.S. District Judge David Doty.

Over the past several months, the NFL and its players have been attempting to resolve their employment disputes by combining a new collective bargaining agreement with the resolution of most of the NFL player litigation. That global settlement is being coordinated by Judge Doty.

Until recently, this case, filed on behalf of the eleven named plaintiffs by counsel Joseph A. Yablonski of the firm Yablonski, Both & Edelman, was not part of the negotiations for the global settlement. However, both the NFL and the representatives of the players have asserted, both before Judge Doty and orally in open court here,[3] that this case must be included in the global settlement if the settlement is to be achieved. The representation of the players in the settlement negotiations is headed by attorney James W. Quinn of the firm Weil, Gotshal & Manges.

In late January, three of the named plaintiffs [4] asked Mr. Yablonski to withdraw his appearance on their behalf; Mr. Yablonski thus moved this court to withdraw his firm's appearance and the court granted his motion. Mr. Quinn has entered his appearance on behalf of the three plain-

---

1. On January 26, 1993, Gary Hogeboom moved to intervene as a plaintiff and, should the class be certified, a class representative. The court has not yet acted on Mr. Hogeboom's motion.

2. The NFL and its players agreed to a collective bargaining agreement (CBA) in 1982 which governed professional football player relations from 1982 to 1987. Upon its expiration, the players and owners were unable to agree to its extension; nor could they agree to the terms of a new CBA. The NFL, however, continued to operate, in many respects, as if the CBA had been extended.

Under the CBA, the NFL paid all players a fixed salary of either $500 or 700 each week during the preseason and 100 percent of their contractual salary prorated over the sixteen or seventeen weeks of the regular season. Even though the NFL was adhering to these CBA terms, all football players signed a contract

which provided that each would receive his annual salary as follows: 10 percent paid over the course of preseason and 90 percent paid over the course of the regular season. For almost all players, the NFL's fixed preseason salary was less than each player's contractual preseason salary. However, if a player lasted in the NFL for the full season, the player benefited under the CBA as he received not only 100 percent of his contractual salary, but also the fixed preseason amount.

This suit was brought by, and on behalf of, players who did not survive the complete season. As a result of NFL's anti-trust violations, they allege, their compensation was less than if the NFL had paid them according to their contracts, not according to the CBA.

3. The court held a status conference on January 27, 1993.

4. Plaintiffs Tice, Utt, and Judson.

tiffs.[5]

Thus, this case comes before the court on defendants' motion to transfer this case to the District of Minnesota in order that it may be part of the global settlement. Mr. Quinn, on behalf of the plaintiffs he represents, concurs.[6] Mr. Yablonski, however, has opposed the motion on behalf of the plaintiffs and would-be intervenor-plaintiff represented by his firm.

The court held a status conference on January 27, 1993, and has received briefs from both the defendants and the plaintiffs represented by Mr. Yablonski. Upon consideration of the representations of the parties, and for the reasons stated below, the court grants defendants' motion.

## DISCUSSION

Under 28 U.S.C. § 1404(a), the court is empowered to transfer a case if to do so would be "in the interest of justice." The court finds that transferring this case meets this standard.

The NFL and its players have been unable to reach an employment agreement since the CBA expired in 1987. During that time, the parties have been involved in numerous lawsuits—in which plaintiffs have been only partially successful—that have used up a significant quantity of resources, both judicial and private. And, due to the nature of American litigation and appellate processes, the court anticipates that, absent a settlement, the trend will continue for years to come.

The global settlement currently before Judge Doty will remedy this situation by not only resolving most of the litigation resulting from Plan B and the CBA, but also by removing the need for further litigation. The court finds it in the interests of judicial economy to support this effort. It is pointless to keep separate two highly related cases at this time.

The plaintiffs represented by Mr. Yablonski make several arguments against transferring this case. Each of these arguments may have significant merit, and the court acknowledges that Judge Doty will have to address each of these issues in order to ensure that the settlement afforded to the members of the *White* and *Tice* class is fair. Briefly summarized, the arguments are as follows:

1. Plaintiffs assert that Mr. Quinn and Weil, Gotshal & Manges cannot serve as adequate counsel for the *Tice* class, should it be certified, due to a conflict of interest.[7] However, Mr. Quinn is counsel for the *White* class, whose interests may well be divergent from the *Tice* classmembers' interests.[8] If Judge Doty finds that the classmembers' interests are divergent, Mr. Quinn might be precluded from representing the *Tice* plaintiffs.

2. Plaintiffs also raise doubts about the adequacy of the *White* named plaintiffs. Apparently, none of the *White* named plaintiffs has received less compensation due to his being cut prior to the end of the season. The typicality of the class representatives is therefore in question.

---

**5.** Mr. Quinn has also entered an appearance for two more individuals, plaintiffs Keys and Rimington. However, Mr. Yablonski is still counsel of record for these two individuals.

**6.** The court agreed on January 27, 1993, to transfer a second football player suit, *Lewis v. NFL,* Civ. Action No. 91–2685 (RCL), to the District of Minnesota only for purposes of participation in the global settlement. In that case, Mr. Quinn, who filed suit on behalf of the players and was their counsel, concurred in the NFL defendants' motion to transfer. A third case, *Brown v. Pro Football, Inc.,* Civ. Action No. 90–1071 (RCL), also pending before the court, is not part of the settlement; there has been no motion to transfer it to Minnesota.

**7.** This court found that Weil, Gotshal & Manges at one point did have a conflict of interest in *Lewis* that prevented a class from being certified; that same conflict is not applicable to this case.

**8.** Due to the fact that there is a limited settlement pool, any increase in payment to the *Tice* classmembers necessarily reduces the amount each *White* classmember receives. Although every *Tice* classmember apparently is also a *White* classmember, none of the named plaintiffs in *White,* it appears, has suffered the same injuries the *Tice* classmembers have suffered. Mr. Quinn's representation of the *White* plaintiffs may place him in *de facto* conflict with the *Tice* classmembers.

**258**

3. Plaintiffs raise serious concerns about the adequacy of the named representatives in the *Tice* litigation as well. Under the terms of the settlement, each of the plaintiffs who has dropped Mr. Yablonski in favor of Mr. Quinn will receive his full damages; the rest of the class will receive only a pro rata share of a limited pool (which Mr. Yablonski claims is approximately $5 million). Thus, those named plaintiffs will receive several times the damages similarly-situated classmembers will receive. Although courts have approved settlements in which named plaintiffs receive higher awards, rarely is the discrepancy between the amount received by the named plaintiffs and the amount given to the classmembers as great as in this case. In addition, discrepancies are disfavored and are not approved *pro forma*. When they are approved, it is usually because there are sufficient justifications: for instance, the named plaintiffs may have taken great risks in going forward with the litigation or may have expended significant time or resources into the lawsuit. Finally, there appears to be an attempt to induce these named plaintiffs to "sell out" Mr. Yablonski in order to get the settlement on track; if Judge Doty find this to be the case, these individuals may have a conflict which would prevent them from serving as adequate class representatives.

4. Another issue raised by plaintiffs concerns the fact that interests not directly involved by the *White* case are subject to settlement here. Plaintiffs cite the court to *Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir.1981), in which Judge Friendly rejected a class settlement because the settlement precluded claims not immediately pertinent to that lawsuit. Here, where the *Tice* plaintiffs' allegations involve issues (the CBA) that are not specifically and directly addressed by Plan B, Judge Doty will have to address whether the *White* plaintiffs even possess the authority to settle the *Tice* claims.

5. Also in *Super Spuds*, the court noted that a settlement that is contrary to the interests of some may not be approved solely because it is beneficial to the class as a whole. Plaintiffs have expressed doubts that, in the hopes of wrapping up all the NFL litigation, the interests of the *Tice* plaintiffs will be sacrificed.

All of the questions and issues raised by plaintiffs' counsel are potent reminders to the court that the interests of many individuals are at stake. However, at this point, they are premature. At present, no class—either plaintiff or defendant—has been certified. And, to date, the settlement has not been finalized. These concerns become relevant when and if a class is certified and those class members become part of the global settlement.

Nonetheless, the court is greatly troubled by this motion, and it is only with great reluctance that the court approves the transfer. The court faces a dilemma. One choice is to deny defendants' motion to transfer; although this would give the court the ability to ensure that plaintiffs' rights are fully protected, it would almost certainly destroy all hopes of a settlement that has the potential to benefit these plaintiffs, not to mention an entire industry. To transfer the case, however, opens up the possibility for this settlement, but places these plaintiffs in a less-certain position. (And, given the number of issues that must be addressed prior to the settlement taking effect, it is not at all clear that a settlement is possible.)

The court is also troubled by the manner in which the NFL and the players have approached this case in their settlement negotiations. Mr. Yablonski made it eminently clear to counsel for the NFL that Mr. Quinn had no authority to settle the *Tice* litigation when, as before the end of January, Mr. Quinn represented none of the plaintiffs in this case. Mr. Yablonski has successfully represented the NFLPA and its players in litigation before this court, and the court must question the motives of the NFL and the players association when they conduct negotiations for a settlement and reach an agreement to settle the *Tice* case without even consulting Mr. Yablonski, the only attorney of record at that point for the plaintiffs in the *Tice* case. There is also a serious question as to the propriety of Mr. Quinn's communicat-

ing with *Tice* plaintiffs who were then represented by Mr. Yablonski.[9]

## CONCLUSION

In light of the arguments plaintiffs raise and these issues, it is evident that Judge Doty faces several serious issues regarding this case. Mr. Yablonski will have the opportunity to raise each of these issues to Judge Doty on behalf of the players he represents. The court is confident that Judge Doty will competently address these issues and ensure that these plaintiffs are adequately represented and fairly treated.

Therefore, it is hereby ORDERED that this case shall be transferred FORTHWITH to the United States District Court for the District of Minnesota for the purposes of settlement pursuant to 28 U.S.C. § 1404(a).[10]

SO ORDERED.

---

9. Mr. Quinn defended himself at oral argument to charges that he had solicited these plaintiffs by stating that he did not make the first contact to any player. He conceded that he returned their telephone calls and spoke to them at a time that they were still represented by Mr. Yablonski. The court does not address this issue as it has not been properly raised and briefed. Judge Doty can address this issue as well, should he believe it appropriate.

10. Both the plaintiffs represented by Mr. Quinn and defendants acknowledged in open court that the transfer of the case is for settlement purposes only. In addition, the same parties consent to the transfer of this case back to this court should the proposed settlement between the National Football League and the players not be achieved. Based on the prior representations of the plaintiffs represented by Mr. Yablonski, the court does not doubt that they also would consent to a transfer back to this court should a settlement not be achieved.