SEARIVER MARITIME FINANCIAL HOLDINGS, INC., et al., Plaintiffs,

v.

Frederico V. PENA, et al., Defendants.

Civil Action Nos. 96–02142(SS), 96–02681(SS).

United States District Court, Columbia.

Jan. 29, 1997.

Richard N. Carrell, Fulbright & Jaworski, Houston, TX, for Plaintiffs.

David Bono, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Plaintiffs Seariver Maritime Financial Holdings, Inc., Seariver International, Inc. and Seariver Maritime, Inc. challenge on constitutional grounds a statute that prevents them from operating the supertanker S/R Mediterranean, formerly the Exxon Valdez, in Alaska's Prince William Sound. This matter is now before the Court on the motion of the Defendants, Secretary of Transportation, U.S. Department of Transportation, Attorney General and U.S. Department of Justice, to transfer this case to the United States District Court for the District of Alaska or, in the alternative, to dismiss, and Plaintiffs' opposition thereto.

### Factual Background

On March 24, 1989, the Exxon Valdez ran aground and spilled approximately 11,000,000 gallons of oil into Prince William Sound. On August 18, 1990, President Bush signed into law the Oil Pollution Act of 1990 ("OPA"). Section 5007 of the OPA reads:

> Notwithstanding any other law, tank vessels that have spilled more than 1,000,000 gallons of oil into the marine environment after March 22, 1989, are prohibited from operating on the navigable waters of Prince William Sound, Alaska.

33 U.S.C. § 2737. In September 1991, Exxon entered into a consent decree with the United States and the State of Alaska which effectively settled all pending civil and criminal matters arising out of the spill.

Under the terms of the consent decree, the federal and state governments, and Exxon agreed to "release and covenant not to sue or to file any administrative claim against [the opposing party] with respect to any and all civil claims, including ... any other civil claims that could be asserted ... relating to or arising from the Oil Spill." Consent Decree at 14, 20. Section 38 of the agreement states that

> The [U.S. District Court for the District of Alaska] shall retain jurisdiction of this matter for the purpose of entering such further orders, direction, or relief as may be appropriate for the construction, implementation, or enforcement of this Agreement.

Consent Decree at 29.

Plaintiff Seariver Maritime, Inc. was formerly Exxon Shipping, and is thus a signatory to the consent decree. As a result of the OPA, Seariver has not reentered Prince William Sound and has been operating the Exxon Valdez, now renamed the S/R Mediterranean, in the Mediterranean Sea. Seariver now wishes to return the ship under its new name to the Prince William Sound where it would join an identical sister ship in transporting oil from Alaska to the 48 contiguous states. Under the stated terms of Section 5007 of the OPA, the S/R Mediterranean can no longer operate in Prince William Sound. Plaintiffs challenge Section 5007, claiming it (1) violates the due process and double jeopardy clauses of the Fifth Amendment; (2) constitutes a Bill of Attainder in violation of Article I, Section 9 of the Constitution; and (3) operates as an *ex post facto* law in violation of Article I, Section 9.

Plaintiffs first brought this action in the Southern District of Texas. The Texas court ruled that venue was not proper in Texas, but would be proper in either the District of Columbia or Alaska. The Texas court initially dismissed the matter and Plaintiffs refiled in the District of Columbia. The Texas court then reconsidered, choosing instead to transfer the case to this Court. In transferring the case, the Court noted that it was not taking a position that the District of Columbia was a better forum than Alaska—just

that it is a proper venue under 28 U.S.C. § 1391(e).

Defendants move for transfer to Alaska pursuant to 28 U.S.C. § 1406(a) which states that a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Alternatively, they move for transfer under 28 U.S.C. § 1404(a) which provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Plaintiffs claim that the Texas court's ruling that the District of Columbia is proper venue precludes any finding under § 1406(a) by this Court that it is the "wrong" district. They also assert that Defendants have not met their burden in showing that a transfer would be in the "interest of justice," pursuant to § 1404(a).

Plaintiffs present a serious claim—essentially that Congress enacted a statute with the specific and only intent of punishing Exxon for the Exxon Valdez disaster. Defendants claim that in light of the Consent Decree, Plaintiffs have waived their right to pursue any additional claims arising out of the Exxon Valdez disaster whether it be a constitutional claim or otherwise. The Court takes very serious a claim that a party may not make non-frivolous invocations of their constitutional rights. The Court, however, does recognize that in certain instances, a party, for whatever reason, may choose to make an informed waiver. *See D.H. Overmyer v. Frick Company*, 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (recognizing that party may waive Constitutional right to due process).

· Under 28 U.S.C. § 1406(a), this Court must transfer or dismiss this case if it determines it is the "wrong" district to hear the case. Under Defendants' theory, the District of Alaska retained jurisdiction to enforce and interpret the consent decree and therefore *must* determine whether Plaintiffs' constitutional claims are precluded by the decree. Since, however, the U.S. District Court for the Southern District of Texas has already

ruled that the District of Columbia is a proper venue and there has been no direct appeal of that ruling, the Court finds no reason to disturb that decision.

■ Rather, the Court considers this matter under § 1404(a), the law of "forum non conveniens," specifically to determine whether it is in the "interest of justice" to transfer this matter to Alaska. The Court has broad discretion in determining whether to transfer a lawsuit from one forum to another. *See e.g. Plum Tree v. Stockment,* 488 F.2d 754, 756 (3d.Cir.1973); *Goldsberry v. Ford Motor Company,* 343 F.Supp. 1163 (E.D.Wisc.1972). In making this determination, the Court must weigh the various interests of the parties.

■ Weighing in favor of keeping the matter here is that this is the forum chosen by the plaintiffs. Furthermore, it is a forum where the defendants, representatives and agencies of the United States Government, can defend the action without any great inconvenience. Nevertheless, this is a case where discovery will be at a minimum. Further, in all likelihood the lawsuit will be decided on a motion for summary judgment and an evidentiary trial will be avoided. Thus there likely will be no issue relating to the convenience of witnesses. While the factors in favor of litigating the case in the District of Columbia are significant, they do not outweigh the strong interests of the State of Alaska, as enumerated below.

There are two reasons why the U.S. District Court for the District of Alaska would be a more convenient forum. First, there is a genuine issue whether the subject matter of this suit is controlled by the consent decree. The U.S. District Court for the District of Alaska retained jurisdiction to interpret the consent decree and is clearly in the best position to do so. Obviously, a defendant cannot automatically cause a case to be transferred to the district retaining jurisdiction over a consent decree merely by alleging that an action falls within the ambit of that decree. But in this case, the very specific "release and covenant not to sue" clause in the consent decree raises a serious question as to whether plaintiffs waived their right to challenge Section 5007 of the OPA. This is

particularly so because the consent decree was signed *after* the enactment of the OPA and, as is undisputed, all parties knew of the statute's existence. Accordingly, the U.S. District Court for the District of Alaska is in the best position to determine the applicability of the decree to the facts of this case.

Second, the citizens of Alaska have an extraordinary interest in the outcome of this suit. As indicated by the amicus brief of the Native Village of Port Graham and Valdez Native Tribe, many Alaskans would be deeply affected by the prospect of the ship formerly known as the "Exxon Valdez" returning to Prince William Sound. This is a vessel that on its last visit inflicted immeasurable damage to the people and ecology of Alaska. While it may be debatable whether it was the ship or its captain that actually caused the disaster, the Court recognizes the interests of the citizens of Alaska to participate in the proceedings arising out of this case. As the Supreme Court stated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947),

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

*Id.* While the interpretation of a federal statute can have broad implications, it is clear in this case that the people of Alaska have an interest in the dispute that far outweighs the interests of the citizens of this District. Plaintiffs note that they are located in Texas, not Alaska. This, of course, does not affect the balance in favor of the District of Columbia any more or less than it favors Alaska.

This Court is in no better position to determine the constitutionality of Section 5007 than the U.S. District Court for the District of Alaska. It cannot be the case that this Court is in a better position to consider questions relating to the constitutionality of statutes simply because Congress is located in the District of Columbia.

Accordingly, pursuant to 28 U.S.C. § 1404(a), the Court finds that it is for the "convenience of parties ... [and] in the *interest of justice*" to transfer this case to the U.S. District Court for the District of Alaska. An appropriate order is attached to this opinion.

### ORDER

This matter is before the Court on Defendants' motion to transfer this case to the U.S. District Court for the District of Alaska or, in the alternative, to dismiss, and Plaintiffs' opposition thereto. For the reasons stated in that attached Memorandum Opinion, it is hereby

**ORDERED** that Defendants' motion to transfer be **GRANTED**; and it is further

**ORDERED** that this matter be **TRANS-FERRED** to the U.S. District Court for the District of Alaska.