**Martin Gardner REIFFIN, Plaintiff,**

v.

**MICROSOFT CORPORATION
and Harold C. Wegner,
Defendants.**

**No. CIV.A.2000–567 RMU.**

United States District Court,
District of Columbia.

June 26, 2000.

Martin Gardner Reiffin, Danville, CA, Plaintiff pro se, Mr. Martin G. Reiffin.

Gary M. Zinkgraf, Foley & Lardner, Washington, DC, for defendant Harold C. Wegner.

William D. Dolan, III, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, for defendant Microsoft Corporation.

## MEMORANDUM OPINION

**Granting the Defendants' Motions for Transfer of Venue; Denying Other Pending Motions Without Prejudice as Moot**

URBINA, District Judge.

## I. INTRODUCTION

This patent, antitrust and defamation action comes before the court upon the defendants' motions to dismiss, the defendants' motions for transfer of venue, and the plaintiff's motion to transfer this case to the Calendar Committee for reassignment as a related case. For the reasons which follow, this court will grant the defendants' motions for transfer of venue and will deny the other pending motions without prejudice as moot.

## II. BACKGROUND

Martin Reiffin ("the plaintiff") is a resident of California. *See* Am. Compl. ¶ 10. Defendant Microsoft is incorporated in the state of Washington and also has its principal place of business in that state. The only connection between Microsoft and this district alleged by the plaintiff is that Microsoft has an office here and conducts business here.[1] *Id.* ¶ 12. Defendant Harold Wegner, an attorney and a professor of law, is a resident of Virginia and is a member of the law firm of Foley and Lardner, which represents Microsoft in the instant matter.[2] *See* Am. Compl. ¶ 96. The plaintiff alleges that Mr. Wegner libeled him by making statements to his law-school patent students and by publishing articles which discussed the California litigation and opined that Mr. Reiffin's patents were invalid "submarine patents."[3] *Id.* ¶¶ 92–95. The plaintiff alleges that Mr. Wegner acted in conspiracy with Microsoft, although he does not allege that Mr. Wegner met or communicated with Microsoft as part of the conspiracy.

---

1. "[Title 28 U.S.C.] § 1391(c) ... makes a corporate defendant a resident for venue purposes in any district 'in which it is incorporated or licensed to do business or is doing business.' Hence a plaintiff suing a corporate defendant has many choices of venue and not always will the chosen venue be a convenient forum." 1A *Moore's Federal Practice* at 4327 (2d ed.).

2. The parties have not informed the court whether Mr. Wegner and his firm represented or advised Microsoft in Mr. Reiffin's California action.

3. "Patents that remain 'submerged' during a long *ex* parte examination process and then 'surface' upon the grant of the patent have been labeled 'submarine patents.' * * * A holder of a 'submarine patent' may be able to demand high royalties from non-patent holders who invested and used the technology not knowing that a patent would later be granted.... Congress addressed the perceived problem of 'submarine' patents by amending the patent term provision in the Patent Act ...." *Discovision Assocs. v. Disc Mfg., Inc.,* 1997 WL 309499, *13 n. 11 (D.Del.1997); *see also Ricoh Co., Ltd. v. Nashua Corp.,* 185 F.3d 884, 1999 WL

On December 2, 1997, the U.S. Patent and Trademark Office ("PTO") issued patent numbers 5,694,603 and 5,694,604 to Mr. Reiffin. The patents concern an "editor-compiler system" which may speed the writing of certain types of software programs. *See* Microsoft's Mot. to Dis., Stay or Transfer Venue ("Microsoft's Mot.") at 3. The parties agree that a few days after the PTO issued the '603 and '604 patents [4] to Mr. Reiffin, he wrote letters to the chief executive officers of eleven major computer manufacturers. *See* Am. Compl. ¶ 23; Microsoft's Mot. at 3. Mr. Reiffin's letters "invited the manufacturers to bid for the purchase of plaintiff's" patents. *Id.* Mr. Reiffin's letters also identified "ten major products of Microsoft" and suggested that the CEOs ask their patent counsel whether his patents covered those products. *See* Am. Compl. ¶ 23; Microsoft's Mot. at 3–4.

In January 1998, Mr. Reiffin filed an action in the U.S. District Court for the Northern District of California ("the Northern District" or "the California court"), Dkt. No. C–98–0266–VRW, alleging that Microsoft had infringed his '603 and '604 patents. Microsoft responded with a motion for summary judgment on the ground that Mr. Reiffin's patents were invalid and had not been infringed by Microsoft. Mr. Reiffin opposed the motion and filed a counter-motion for summary judgment of validity and infringement. By Order dated July 10, 1998, the Honorable Vaughn R. Parker ("the California Judge") held that Mr. Reiffin's patents were invalid and granted summary judgment to Microsoft. *See* Microsoft's Mot. at 5 and Ex. A.

Mr. Reiffin appealed the Northern District's decision to the U.S. Court of Appeals for the Federal Circuit, which held oral argument in October 1999. *See* Am. Compl. ¶ 85. The appeal is pending.

## III. LEGAL STANDARD AND DISCUSSION

The defendants seek a transfer of venue pursuant to 28 U.S.C. § 1404. Section 1404(a) provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the movants, the defendants bear the burden of establishing that the transfer of this action is proper. *See Air Line Pilots Ass'n. v. Eastern Air Lines*, 672 F.Supp. 525, 526 (D.D.C.1987); *International Brotherhood of Painters v. Best Painting & Sandblasting Co.*, 621 F.Supp. 906, 907 (D.D.C.1985). Section 1404(a), however, vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 27, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citation omitted); *Kafack v. Primerica Life Ins. Co.*, 934 F.Supp. 3, 5 (D.D.C.1996); *accord Mayweathers v. Bunnell*, 1994 WL 615708, *2 (9th Cir.1994) ("weighing of factors for and against a transfer involves subtle considerations and is best left to the discretion of the trial judge") (citation omitted).

*Statutory Transfer of Venue Contrasted with Forum Non Conveniens.*

Because section 1404(a) contemplates transfer rather than dismissal, transfer is available "upon a lesser show-

---

88969, * 3 (Fed.Cir.1999) (describing submarine patent as "the use of continuation applications to claim previously disclosed but unclaimed features of an invention many years after the filing of the original patent application").

*See, e.g., Reiffin v. Microsoft*, 1998 WL 397915, *6, 48 U.S.P.Q.2d 1274 (N.D.Cal. 1998) ("In response to Microsoft's charges that Reiffin has strategically amended his claims in order to benefit from the inventions of others via a 'submarine patent,' Reiffin claims there is nothing unlawful about such a strategy.").

4.  It is common for litigants and courts in patent cases to refer to patents by the last three digits of the identifying number assigned them by the U.S. Patent and Trademark Office.

ing of inconvenience" than that required for a non-statutory *forum non conveniens* dismissal. *See SEC v. Savoy,* 587 F.2d 1149, 1154 (D.C.Cir.1978) (quoting *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955)); *accord Jiffy Lubricator Co. v. Stewart–Warner Corp.,* 177 F.2d 360, 362 (4th Cir.1949); *Lung v. Yachts International, Ltd.,* 980 F.Supp. 1362, 1370 (D.Hawai'i 1997); 1A *Moore's Federal Practice* at 4326 (2d ed.). "This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." *Savoy,* 587 F.2d at 1154.

*Could Plaintiff Have Brought this Action in the Northern District of California?*

Under section 1404(a), the threshold question is whether this action could have been properly brought in the proposed transferee district, the Northern District of California. The basic venue statute provides that venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(a)(2). Under this standard, the court finds that venue is proper in the Northern District of California. According to the plaintiff, defendant Wegner participated in a conspiracy directed against the plaintiff. Specifically, the plaintiff alleges that Mr. Wegner, a law professor, conspired with Microsoft to violate the antitrust laws by publishing papers which made false and misleading statements about Mr. Reiffin's patents. If Mr. Wegner's statements about Mr. Reiffin's patents were indeed intentionally false, Mr. Wegner knew they would adversely affect Mr. Reiffin and damage his reputation in

his home state, California. *See Panavision Int'l v. Toeppen,* 141 F.3d 1316 (9th Cir.1998) ("Toeppen [the defendant] knew Panavision [the plaintiff] would likely suffer harm there [in California] because, although at all relevant times Panavision was a Delaware limited partnership, its principal place of business was California.....”). Thus, at the time Mr. Reiffin filed the instant action, the California court could have properly exercised personal jurisdiction over Mr. Wegner without Mr. Wegner's consent. *See Panavision,* 141 F.3d 1316 (court may exercise jurisdiction if defendant's conduct "is aimed at or has an effect in the forum state") (citing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) and *Ziegler v. Indian River Cty.,* 64 F.3d 470, 473 (9th Cir. 1995)); *see, e.g., Georgia Gulf v. Ward,* 701 F.Supp. 1556 (N.D.Ga.1987) (participation in conspiracy to injure Georgia resident supports jurisdiction over non-resident).[5]

In any event, any doubt about Mr. Wegner's amenability to personal jurisdiction in the Northern District of California has been eliminated by his express written consent to be sued in that district. Mr. Wegner states unequivocally, "Wegner hereby consents to such personal jurisdiction, and waives the right to raise such an objection to the case being heard in the Northern District of California." Wegner's Reply at 6. The court emphasizes that Mr. Wegner will be expected to abide by this representation.[6]

*Private- and Public–Interest Factors Considered in Venue Analysis.*

In considering whether to transfer this matter to another, purportedly more appropriate venue, this court also considers a number of public- and private-interest factors, including "the convenience of

---

5. The "effects doctrine" theory of personal jurisdiction was created in the tort context. The Ninth Circuit, however, has applied the doctrine in the context of intellectual-property infringement claims. *See Panavision,* 141 F.3d at 1321 (in action for trademark dilution, trademark infringement and unfair

competition, Circuit stated, "[T]he present case is akin to a tort case.").

6. Indeed, the brief which contains this representation has been forwarded to the transferee court as part of the file in this matter.

the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory process to compel the attendance of unwilling witnesses; the amount of expense for willing witnesses; the relative congestion of the calendars of potential transferee and transferor courts; and *other practical aspect[s] of expeditiously and conveniently conducting a trial.*" [7] *See SEC v. Page Airways,* 464 F.Supp. 461, 463 (D.D.C.1978) (emphasis added); *cf. Decker Coal Co. v. Commonwealth Edison,* 805 F.2d 834, 843 (9th Cir. 1986). These "practical" public-interest factors include the potential transferee court's "familiarity with the governing laws." [8] *See Shapiro, Lifschitz & Schram v. Hazard,* 24 F.Supp.2d 66, 71 (D.D.C. 1998) (citing *Trout Unlimited v. U.S. Department of Agriculture,* 944 F.Supp. 13, 16 (D.D.C.1996)).

*Degree of Deference Accorded to Plaintiff's Choice of Forum.*

In assessing the convenience to the parties of the two potentially proper venues, the court recognizes that the plaintiff's choice of forum is usually accorded "substantial deference" in the venue analysis. *See Shapiro,* 24 F.Supp.2d at 71 (citing *Gross v. Owen,* 221 F.2d 94, 95 (D.C.Cir. 1955)). Deference to the plaintiff's choice of forum is particularly strong where the plaintiff has chosen his home forum. *See Nichols v. United States Bureau of Pris-*

ons, 895 F.Supp. 6, 8 (D.D.C.), *pet. for writ of mandamus den.,* 1995 WL 551095 (D.C.Cir.1995). Conversely, substantially less deference is warranted when the forum preferred by the plaintiff is not his home forum. *See Piper Aircraft v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *accord Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir.1968); *Hyundai Space & Aircraft Co. v. Boeing Co.,* 1999 WL 910131, \*4 (N.D.Cal.1999); *Ackert v. Ausman,* 198 F.Supp. 538, 542 (S.D.N.Y.1961), *pet. for writ of mandamus den.,* 299 F.2d 65 (2d Cir.1962) (upholding transfer of venue, finding that other factors "far outbalance[d] any weight to be given to the choice of forum by this plaintiff who does not reside in this district and lives far distant from it.").

*Convenience of Transferee Forum for Plaintiff.*

This rule squarely applies here, because the forum to which the defendants seek to transfer this action is *the plaintiff's home forum,* California. Indeed, the plaintiff is a resident of the state of California. *See* Am. Compl. ¶ 10. Moreover, the plaintiff will not be burdened by litigating in the Northern District of California, because the plaintiff himself chose that district as the forum for his clearly related, earlier-filed patent action against Microsoft.[9] *See Oudes v. Block,* 516 F.Supp. 13, 14 (D.D.C.

---

7. The location of counsel "carries little, if any, weight in an analysis under § 1404(a)." *Vencor Nursing Centers, L.P. v. Shalala,* 63 F.Supp.2d 1, 6 n. 4 (D.D.C. 1999).

8. The public-interest factors also include "the local interest in deciding local controversies at home." *See Trout Unlimited,* 944 F.Supp. at 16. Because this controversy is not entirely or peculiarly local, this is not a compelling factor in this case. Nonetheless, the court recognizes that courts situated in California have a greater particularized interest in resolving allegations that a California citizen has suffered injury. *See Paley v. Estate of Ogus,* 20 F.Supp.2d 83, 93 (D.D.C.1998) (choice of District of Columbia as forum was favored "because the

District of Columbia has an interest in litigation involving a District of Columbia domiciliary ...."). This is particularly true where, as here, many acts of which plaintiff complains allegedly took place in California: Microsoft's allegedly dishonest conduct in the Northern District proceedings and the Northern District Judge's allegedly mistaken legal rulings.

9. *Cf. Harris v. Republic Airlines, Inc.,* 699 F.Supp. 961, 963 (D.D.C.1988) (granting transfer where the plaintiff's choice of forum had an "extremely tenuous" relationship to the District of Columbia and the circumstances giving rise to the dispute were centered in Minnesota, the transferee district).

1981) (any inconvenience or hardship to plaintiff occasioned by transfer to home forum "would be negligible or non-existent"); *accord Colortyme Financial Services v. Kivalina Corp.,* 940 F.Supp. 269, 275 (D.Hawai'i 1996) ("[M]ost importantly, there can be no argument that it would be inconvenient for [the plaintiff], a Texas citizen, to litigate in Texas, especially where it already is embroiled in litigation there.")[10]; *cf. Sheraton Operating Corp. v. Just Corporate Travel,* 984 F.Supp. 22, 26 (D.D.C.1997) (declining to transfer to Northern California where "it undoubtedly would be a burden on the" plaintiff to litigate there).

*Other Private–Interest Factors are Neutral or Favor Transfer of Venue.*

Having considered the degree of deference due the plaintiff's choice of forum, the court turns to the other private-interest factors which bear on transfer of venue. The "relative ease of access to sources of proof" is not a significant factor either way; if anything, it may tend to favor the Northern District of California. As to Mr. Reiffin's patent claim, that claim already has been litigated and decided in the California court, so that court has the parties' submissions bearing on the patents' validity and infringement. As to Mr. Reiffin's claim that Microsoft suppressed evidence and otherwise acted dishonestly in the California proceeding, the California court is familiar with that proceeding and has any submissions or transcripts which may be relevant.

In the private-interest analysis, the court also considers the availability of compulsory process to command the attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses. This factor does not influence the transfer analysis, because the parties have not provided any information about whether they foresee calling witnesses in this action, nor where such potential witnesses reside or work. In some cases, another private-interest factor is the "possibility of a view of the premises." This factor is not relevant in this patent, antitrust and defamation action.

*Facts and Claims are Identical or Closely Related to Earlier Action in Transferee Forum.*

Having concluded that limited deference is due the plaintiff's choice of forum and that the other private-interest factors are neutral or slightly favor the California court, the court turns to the "public-interest" factors. Most significantly, the court notes that most of the facts and issues in this action are identical or closely related to those considered, and decided, by the California court in Mr. Reiffin's prior action against Microsoft. Much of the complaint re-argues points which Mr. Reiffin made (or could have made) in the California proceeding.[11] *See Reiffin v. Microsoft,* 1998 WL 397915, 48 U.S.P.Q.2d 1274 (N.D.Cal.1998) (not in F.Supp.). Despite the Northern District's clear final judgment that Mr. Reiffin's '603 and '604 patents are invalid, he argues at length in the instant complaint that those same patents *are* valid.[12] He also renews his conten-

10.  *Accord Wheeling–Pittsburgh Steel Corp. v. EPA,* 1999 WL 111459, *3 (E.D.Pa.1999) (transferring to district which plaintiff had previously used to challenge defendant's actions with regard to the same plant at issue in new complaint); *American Littoral Society v. EPA,* 943 F.Supp. 548, 551 (E.D.Pa. 1996) (deference to plaintiff's chosen forum was diminished by the fact that plaintiff had originally litigated matter in forum it later sought to avoid).

11.  The Northern District Judge knows best which points Mr. Reiffin raised, or was

given the opportunity to raise, in his first action against Microsoft.

12.  The court recognizes the possibility that the plaintiff may be engaged in forum-shopping. As the transferee court has stated, "Circumstances in which a plaintiff's chosen forum will be accorded little deference include cases of ... forum shopping." *Royal Queentex Enterprises v. Sara–Lee Corp.,* 2000 WL 246599, *3 (N.D.Cal.2000). Similarly, the Fourth Circuit has stated, "The evidence indicates a high degree of forum shopping which we recognize as an inevitable adjunct to the congressional poli-

tion—considered and rejected by the California Judge—that Microsoft infringed those patents. For instance, the complaint reiterates Mr. Reiffin's claim, asserted in the California action, that Microsoft has "deprived plaintiff of his rights under the Patent Laws", in part by "deceiv[ing] ... potential customers to believe that plaintiff's patents are invalid." *See* Am. Compl. ¶¶ 6–7. Mr. Reiffin attempts to fit his complaint under the antitrust rubric by charging that "Microsoft accurately perceives Reiffin's '603 and '604 Patents to be a threat to Microsoft's monopoly of the personal computer software industry." *See* Am. Compl. ¶ 21. The plaintiff elaborates, "Microsoft knows or at least fears that its major software products infringe plaintiff's '603 and '604 Patents, and that it has no defense of invalidity of these patents." *Id.* ¶ 21. If there were any doubts that the instant complaint seeks to reargue the same issues decided by the Northern District, the plaintiff dispels them in his request for relief. He asks this court to "decree: (a) That plaintiff's '603 and '604 Patents are neither invalid, nor 'submarine patents' ... (b) That defendant Microsoft's new 2000–designated products infringe said patents ...." Am. Compl. at 29.

As these statements show, even though Mr. Reiffin's instant claim against Microsoft is denominated as an "antitrust" claim, it returns over and over again to the purported validity and infringement of his patents. *See, e.g.,* Am. Compl. ¶ 17 ("Microsoft's business plan was ruthlessly executed to attain monopoly power by taking from others, without compensation, the following major innovations ... plaintiff's Multithreading invention [the technology which the plaintiff claimed as his own un-

der the patents declared invalid by the California court]."); *id.* ¶ 24 ("Microsoft understood that plaintiff's patents in the hands of plaintiff's potential customers would provide the latter with bargaining power which they might use to withstand Microsoft's abuses of its monopoly power."); *id.* ¶ 25 ("Microsoft maintained its monopoly by depriving plaintiff of his rights under the Patent Laws."). Later in the complaint, Mr. Reiffin states, "The motive for defendants' wrongful acts is that Microsoft knows or fears that it has no tenable defense to Reiffin's patents both of which threaten Microsoft's monopoly." *See* Am. Compl. ¶ 81.[13]

When the complaint is not re-arguing the plaintiff's position that his patents are valid and were infringed by Microsoft, it outlines what he considers bad faith or dishonesty by Microsoft in the California proceeding. The plaintiff then seems to argue that the evidence advanced and the defenses asserted by Microsoft in the California action constitute an antitrust violation when combined with the Microsoft conduct found by Judge Jackson in *United States v. Microsoft,* Dkt. No. 98–cv–1232 (D.D.C. Nov. 5, 1999). Specifically, the plaintiff alleges,

> Based upon false assertions *to the [California] District Court,* Microsoft urged three defenses: (1) a frivolous motion for summary judgment ...; (2) a sham defense of invalidity of the patents; and (3) a sham defense of non-infringement of the patents. Microsoft's real defenses to the action were to obstruct justice by suppression of evidence and by delay of any final determination of the action until after the patents and the plaintiff [sic] had expired.

cy on declaratory judgment suits in patent litigation, but forum shopping must not be indulged in the face of multiple litigation especially where, as here, the shopper is offered an equally convenient forum" *General Tire & Rubber Co. v. Watkins,* 373 F.2d 361, 369 (4th Cir.), *cert. den.,* 386 U.S. 960, 87 S.Ct. 1031, 18 L.Ed.2d 109 (1967) (citation omitted).

13. Paragraphs 26 through 80 do not mention the patents which were declared invalid in the California action, because these paragraphs simply quote from Judge Jackson's Findings of Fact in *United States v. Microsoft,* D.D.C. Dkt. No. 98–cv–1232.

Am. Compl. ¶ 82; *see also id.* ¶ 85 ("As a result of Microsoft's fraudulent misrepresentations to the [California] District Court, Microsoft's motion for summary judgment was granted."); *id.* ¶ 90 ("Microsoft fraudulently misrepresented to the [California] District Court that plaintiff's patents are invalid . . . ."); *id.* ¶ 91 ("Microsoft knew that these allegations were false because Microsoft knew that the record before the District Court revealed . . . .").

In short, the plaintiff has a strong belief, forcefully expressed, that Microsoft acted dishonestly and in bad faith in the related California proceeding, and that that conduct led the Northern District Judge to issue an erroneous ruling. This court expresses no opinion on the merits of those beliefs. However, there were several potential avenues for the plaintiff to raise these concerns, and none of them involve filing a largely duplicative action in this district. Specifically, the plaintiff might have filed a motion for reconsideration, with the Northern District Judge, pursuant to Federal Rule of Civil Procedure 59(e). Alternately, if he believes that Microsoft's alleged dishonesty led the Northern District Judge to issue an erroneous ruling, he could file a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). Lastly, the plaintiff can ask that court to impose sanctions on Microsoft or its counsel.

In any event, the circumstances outlined above strongly favor transfer of venue, because "[t]he interest-of-justice factor encompasses the desire to avoid multiple litigation from a single transaction [and] *to try related litigation together* . . . ." *See Vencor Nursing Centers, L.P. v. Shalala*, 63 F.Supp.2d 1, 6 (D.D.C.1999) (emphasis added); *see also Hawksbill Sea Turtle v. FEMA*, 939 F.Supp. 1, 3 (D.D.C.1996). A court considering transfer of venue "may consider the interest of conserving judicial resources and practical considerations which will facilitate a final resolution of the litigation in an expeditious and inexpensive manner." *Harris v. Republic Airlines*, 699 F.Supp. 961, 962 (D.D.C.1988). On this score, the court further notes that Mr. Reiffin has appealed the Northern District of California's ruling in favor of Microsoft to the Federal Circuit. Should the Federal Circuit vacate the Northern District's decision and remand to the Northern District, and this court declined to transfer the instant action to that court, Mr. Reiffin would have closely related claims pending in two different districts at once.

*Transferee Forum's Extensive Familiarity with Parties, Facts and Legal Issues.*

This does not imply that it would be sensible or convenient to litigate this complaint here if the Federal Circuit affirms (and so does not remand to the Northern District of California). No matter what the Federal Circuit decides, litigating this matter here would squander judicial resources and run the risk of inconsistent judgments on the validity and infringement of Mr. Reiffin's '603 and '604 patents. The Honorable Vaughn R. Walker of the Northern District has already expended substantial time and effort to become familiar with the technology underlying the disputed patents, the prosecution of the patents, the record considered by the Patent Office in issuing the patents, and the legal issues related to the patents' alleged validity and infringement. As the D.C. Circuit has held. "In fleshing out the phrase 'for the convenience of the parties in the interest of justice,' the courts have considered . . . whether one circuit is more familiar with the same parties and issues or related issues than other courts . . . ."[14]

---

14. There is extensive authority for this proposition in the transferee forum, as well. *See Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir.1982) (upholding dismissal of patent suit on ground of *forum non conveniens* because another suit involving same parties and issues was pending elsewhere); *Gaillard v. U.S. Bank National Ass'n*, 1999 WL 910146, *1 (N.D.Cal.1999) (transferring to Minnesota "would be in the

*Oil, Chemical & Atomic Workers Local Union No. 6–418 v. NLRB,* 694 F.2d 1289, 1300 (D.C.Cir.1982) (citation omitted); *see, e.g., Allen v. Scribner,* 812 F.2d 426, 429 (9th Cir.), *amended o.g.,* 828 F.2d 1445 (9th Cir.1987) (district judge denied transfer of venue, in part because "he was quite familiar with the case after some three and one-half years.").

Courts in this district have clearly stated, "The interests of justice are better served when a case is transferred to the district where related actions are pending." *Martin–Trigona v. Meister,* 668 F.Supp. 1, 3 (D.D.C.1987);[15] *see, e.g., Trout Unlimited v. U.S. Department of Agriculture,* 944 F.Supp. 13, 19 (D.D.C. 1996); *Professional Ass'n. Travel Service v. Arrow Air, Inc.,* 597 F.Supp. 475, 477 (D.D.C.1984) (transferring to New York, where pending action raised "quite similar claims"); *Islamic Republic of Iran v. Boeing Co.,* 477 F.Supp. 142 (D.D.C.1979) (transferring where liability issues were "closely similar to issues pending for over two years" in W.D. Wash.); *Celanese Corp. v. Federal Energy Admin.,* 410 F.Supp. 571 (D.D.C.1976).[16] Indeed, this court has transferred an action to a district which had cases sharing only "the same factual underpinning," even though the actions in the transferee court con-

cerned different legal issues. *See Comptroller v. Calhoun First Nat'l. Bank,* 626 F.Supp. 137, 141 (D.D.C.1985). Here, of course, both the facts and the legal issues in the complaint overlap with those in the California action.

Moreover, this court has previously cautioned that "Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesireable." *Smiths Industries Medical Systems v. Ballard Medical Products,* 728 F.Supp. 6, 7 (D.D.C.1989); *accord Narco Avionics v. Sportsman's Market, Inc.,* 1992 WL 74192, *2 (E.D.Pa.1992) (interest in trying all related issues in a single action "is particularly germane to a patent case"); *cf. Advanced Semiconductor Materials v. Applied Materials, Inc.,* 30 U.S.P.Q.2d 1553, 1993 WL 653027 (D.Ariz.1993) (transferring patent-infringement action to California, which was home to two other patent cases involving same parties, even though those cases concerned different patents and plaintiff was resident of chosen forum); *Sweetheart Plastics v. Illinois Tool Works,* 267 F.Supp. 938 (S.D.N.Y. 1967) (fact that judge in transferee court was already familiar with complex details of patent case was a factor favoring transfer).

interests of justice since there are seven identical class actions currently pending" there); *Jarvis v. Marietta Corp.,* 1999 WL 638231, *6 (N.D.Cal.1999); *R. Griggs Group v. Consolidated Shoe, Inc.,* 1999 WL 226211, *4 to *5 (N.D.Cal.1999); *Impra Inc. v. Quinton Instruments Co.,* 17 U.S.P.Q.2d 1890, 1891 (D.Ariz.1990) ("As a general rule, cases should be transferred to districts where related actions are pending.").

**15.** *Accord Cambridge Filter Corp. v. International Filter Co.,* 548 F.Supp. 1308, 1310 (D. Nev.1982) ("Litigation of related claims in the same tribunal is favored in order to avoid dupli[cative] litigation, attendant unnecessary expense, loss of time to courts, witnesses and litigants, and inconsistent results.").

**16.** It appears that the Ninth Circuit follows similar reasoning under its "first-to-file

rule." In *Colortyme Financial Services v. Kivalina Corp.,* 940 F.Supp. 269 (D.Hawai'i 1996), for instance, a franchisor of rent-to-own stores sued in the District of Hawaii to recover on a promissory note against the franchisee. The defendant franchisee moved to transfer the action to Texas, where a related, earlier-filed action was pending. The court granted the motion for transfer of venue, noting, *inter alia,* that transfer served the interest in "avoiding conflicting judgments . . . ." *Id.* at 275. *See also J–R Distributors, Inc. v. Eikenberry,* 725 F.2d 482, 485 n. 3 (9th Cir.1984) (approving of transfer of venue from W.D. Wash., where one defendant performed his official duties, to E.D. Wash., where "various other [related] lawsuits were filed"), *rev'd o.g.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

*Transferee Forum Better Suited to Determine Preclusive Effect of Related Action.*

Just as important, the California court's familiarity with the parties' dispute also renders it better suited to determining, in the first instance, which issues and claims in the instant complaint are precluded by its decision in Mr. Reiffin's closely-related first action against Microsoft. *See* Microsoft's Mot. at 16–17 and Microsoft's Reply at 5 (raising *res judicata* defense to Mr. Reiffin's patent-infringement claim). In *Seariver Maritime Financial Holdings, Inc. v. Pena,* 952 F.Supp. 9 (D.D.C.1997), for instance, the owners of the Exxon Valdez vessel challenged a statute which prohibited the vessel from navigating in an Alaskan sound, and the defendant moved to transfer the case to federal court in Alaska. The defendant noted that a consent decree entered in proceedings before the Alaska court might bar the plaintiff's challenge. Based in part on this fact, this court granted the motion to transfer venue, reasoning that a clause in the Alaska decree "raises a serious question as to whether plaintiffs waived their right to challenge [the statute]. * * * Accordingly, the U.S. District Court for the District of Alaska is in the best position to determine the applicability of the decree to the facts of this case." *Seariver,* 952 F.Supp. at 11. Likewise, in the case at bar, the California court is in the best position to determine which claims or issues in the instant complaint are precluded by its own decision. *See Eagle–Picher Industries, Inc. v. American Employers Ins. Co.,* 557 F.Supp. 225, 226 (D.D.C.1983) (defendants contended that some claims were precluded by decisions in a related First Circuit action, and the court transferred, stating,

"Those preclusion motions place this Court in the position of deciding what exactly the First Circuit decided, and whether that decision would be *res judicata* under the preclusion law of that Circuit . . . .").[17]

*Relative Speed of Resolution in Transferee Forum.*

Lastly, it is also appropriate for the court to consider the relative docket congestion and potential speed of resolution by the transferor and transferee courts. *See SEC v. Savoy Industries,* 587 F.2d 1149, 1156 (D.C.Cir.1978), *cert. den.,* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979). As this court reasoned in granting transfer of venue in a recent case,

> It is not evident that a transfer to the northern district . . . will lead to unnecessary delay. Additionally, this court has neither dealt with other issues in the suit nor has it familiarized itself with the underlying merits of the case. Since this case is in its earliest stages,[18] there would be no delay associated with the [transferee] district court's having to familiarize itself with this case.

*Trout Unlimited v. U.S. Department of Agriculture,* 944 F.Supp. 13, 19 (D.D.C. 1996). This rationale is even stronger here, because the Northern District of California is already well acquainted with the facts and legal issues implicated in the instant complaint. *See Savoy Indus.,* 587 F.2d at 1156 (D.C. was more appropriate venue, in part because this court had a "familiarity with the allegations, characters, lawyers and previous history of litigation"); *see also The Hawksbill Sea Turtle,* 939 F.Supp. at 4 (transferring to court that had been forum for prior action involving similar facts and issues); *Tice v. Pro Football, Inc.,* 812 F.Supp. 255 (D.D.C.1993)

17. *Accord Sykes v. Eckankar,* 1998 WL 296368, *1 (N.D.Cal.1998) ("Defendants have made a colorable claim that the principles of *res judicata* apply to plaintiff's present action, based on a recently-dismissed case, also filed by plaintiff, with similar facts. * * * [I]n light of . . . the interests of justice in having defendants' claim of *res judicata* decided by a judge

with knowledge of the previous litigation between the parties, the court grants defendants' motion to transfer.").

18. *Cf. Savoy Indus.,* 587 F.2d at 1156–57 (upholding refusal to transfer where defendants did not seek it until week before trial).

(interest of justice warranted transfer of antitrust action to Minnesota, where global settlement discussions were pending in related antitrust action).

In summary, the compelling public interest in avoiding duplicative proceedings (and potentially inconsistent judgments) warrants transfer of venue under these circumstances.[19] *See Baird v. California Faculty Ass'n*, 2000 WL 516378, *1 (N.D.Cal.2000) ("Related litigation pending in the proposed transferee forum is a factor that weighs heavily in favor of transfer") (citation omitted). "To permit a situation in which two cases involving ... the same issues are simultaneously pending in different District Courts leads to the wastefulness of tim[e], energy and money that § 1404(a) was designed to prevent." *Upjohn Co. v. General Accident Ins. Co.*, 581 F.Supp. 432, 435 (D.D.C.1984) (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).[20],[21]

## IV. CONCLUSION

For the reasons set forth above, this court issued an Order on May 31, 2000 granting the defendants' motions for transfer of venue and denying all other pending motions as moot. This Memorandum

Opinion is executed and issued this *22d* day of June, 2000.

---

19. The fact that another court has been the site of a related action is so strong a public-interest factor that this court has transferred venue *sua sponte*. *See Smiths Industries Medical Systems v. Ballard Medical Products*, 728 F.Supp. 6 (D.D.C.1989) (citing *In re Scott*, 709 F.2d 717, 721 & n. 10 (D.C.Cir.1983)). This court has also emphasized. "[T]he interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." *The Hawksbill Sea Turtle*, 939 F.Supp. at 4. *A fortiori*, the interest of justice looms large as a factor counseling transfer here, because the evidence does not suggest this district would be more convenient, on balance, for potential witnesses, the defendants or even the plaintiff himself.

20. *Contrast Vencor Nursing Centers, L.P. v. Shalala*, 63 F.Supp.2d 1, 7 (D.D.C.1999)

(declining to transfer venue, in part because "[t]he parties have not notified the court of any litigation in another federal court concerning this dispute ....").

21. The fact that proceedings in this court would be largely duplicative of the California action means that transfer would increase the *net* convenience to the parties and to witnesses—who could otherwise be called upon to appear in this district and testify again on issues already addressed in California. *See Sheraton Operating Corp. v. Just Corporate Travel*, 984 F.Supp. 22, 26 (D.D.C.1997) ("Even if a transfer would significantly benefit [the] Defendants, the Court will not grant the motion if the result merely would shift the inconvenience from Defendants to [plaintiff]; the net convenience must increase.") (quoting *Kirschner Brothers v. Pannill*, 697 F.Supp. 804, 807 (D.Del.1988)).